# W. D. JANUARY v. STATE.

No. A-2838.   Opinion Filed June 17, 1919.

(181 Pac. 514.)

1. **HOMICIDE—Murder—Information.** The information in this case held to sufficiently charge the crime of murder.

2. **JURY—Drawing and Selecting Jurors—Quashing of Venire.** The law governing the selection of jurors and in drawing juries is directory, and a substantial compliance therewith is sufficient. To authorize the quashing of a venire, the defendant must show irregularities in connection therewith which are reasonably calculated to deprive him of a substantial right.

3. **HOMICIDE—Corpus Delicti—Proof.** Where expert evidence is not introduced to show the cause of death, and the undisputed evidence shows that the defendant shot the deceased three times in his body while the deceased was sitting in a buggy, from which he immediately jumped, took a step or two, fell upon the ground, and expired, it is sufficient to establish the **corpus delicti** as charged in the information.

4. **TRIAL—Instructions—Sufficiency.** Instructions must be considered as a whole, and when so considered, if they correctly charge the law, they are sufficient.

5. **APPEAL AND ERROR—Trial—Comment on Defendant's Personal Appearance—Objection.** It is improper for a prosecuting attorney, when the defendant is not a witness in the case, to adversely comment upon the personal appearance of such defendant, but in order to have such comments reviewed on appeal they must be timely objected to and the court requested to direct the jury not to consider them.

6. **HOMICIDE—Defenses—"Unwritten Law."** The so-called unwritten law, "the right to avenge wrongs done a female member of a defendant's family by killing the wrongdoer," does not exist in this state.

7. **PARDON—Appeal—Mitigating Circumstances—Executive Clemency.** This court is governed entirely by the law as applied to the record, and where the record discloses the fact that a conviction resulted in a trial which was conducted in the lower court free from error, and there is ample proof to support the verdict of the jury and judgment of the court, which imposed the minimum punishment provided by law, for mitigating circumstances, if any, entitling the wrongdoer to relief from the results of his crime, relief must be sought through executive clemency.

*Appeal from District Court, Cleveland County;*
*F. B. Swank, Judge.*

W. D. January was convicted of murder, his motion for new trial was overruled, and he appeals. Affirmed.

*B. F. Williams, J. E. Luttrell,* and *J. A. Cowen,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, W. D. January, hereinafter called defendant, was informed against for the murder of Milton Keck, convicted, and sentenced to imprisonment in the penitentiary at hard labor for the term of his natural life. To reverse the judgment rendered, he prosecutes this appeal.

The charging part of the information is as follows:

"That on the 14th day of January, 1916, in Cleveland county, state of Oklahoma, W. D. January, late of said county and within the jurisdiction of this court, did unlawfully, wilfully and intentionally, maliciously and feloniously, and without authority of law, and with a premeditated design to effect the death of one Milton Keck, in and upon the body of said Milton Keck made a violent assault and battery, and with a certain and deadly weapon, to wit, a pistol, then and there had and held in the hands of him, the said W. D. January, shoot him, the said Milton Keck, and thereby inflicted three mortal wounds

upon the body of him, the said Milton Keck, by him, the said W. D. January, as aforesaid. He, the said Milton Keck, did then and there immediately die, as was intended by him, the said W. D. January, he should, contrary to the statute in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

The defendant demurred to the information upon the ground "that said information does not state facts sufficient to constitute a public offense against the laws of the state of Oklahoma."

The court overruled the demurrer to the information, and the defendant excepted. Thereupon the defendant filed a motion to quash the jury panel and introduced a volume of evidence, which we deem unnecessary to recite, in support of such motion. The court overruled said motion, and the defendant excepted.

The material evidence, which is not disputed, shows that the deceased, Milton Keck, was about 19 years of age, a man in size and weighing about 150 pounds; that for some time he had kept company with a daughter of the defendant, became engaged to marry her, and under promise of marriage seduced her, and she became pregnant, and upon being notified by Keck that he would not marry her, on December 17, 1915, attempted suicide by taking carbolic acid; her life was saved, and on the 22d day of December, 1915, she miscarried; all of which said facts were well known to her father, the defendant, prior to the time Keck was shot; that the 14th day of January, 1916, was a very cold day, the ground being covered with ice, and on the morning of said day the defendant walked to Moore, a town in the vicinity of the defendant's home, and there met Hetzel Drake; that Drake accompanied the defendant home, and while so walking, and prior to reach-

ing the defendant's home, the defendant and Drake met the deceased traveling in a single buggy; that he had gloves on and had a lap robe wrapped about his legs; that the buggy stopped and the defendant asked the deceased if he was Milton Keck, and Keck answered that he was; that the defendant approached to within about six feet of the deceased and shot him three times with a pistol; that the deceased jumped out of the buggy carrying the lap robe with him; that just after the first shot was fired Keck said, "Oh, God damn you," and just after that the defendant said, "You have ruined my family;" that when Keck jumped out of the buggy he took one or two steps and fell on his left side on the frozen ground and died; that no shot was fired after Keck was out of the buggy; Keck was driving very slow with his hands under the lap rope; that after the shooting was over the defendant went over and looked at Keck and said, "I believe he is dead," and the defendant and Drake then walked on to Mr. Emory's; that nothing was seen in the buggy except a milk can; that no weapon was seen except the pistol that the defendant used; that on arrival at Mr. Emory's the defendant called him out and told him there was a dead man in the road up there and he wanted him (Emory) to notify the authorities; that the defendant and Drake then walked on to the defendant's home, ate dinner, and the defendant had a team hitched up and he and Drake came on to Norman and he had a conversation with a deputy sheriff and surrendered.

The clothing worn by the deceased at the time of his death was, against the objection and exception of the defendant, admitted in evidence.

The defendant pleaded not guilty by reason of self-defense and insanity, and extensive testimony of experts

and others was offered in support of and against the plea of insanity.

The defendant excepted to the giving of the fourth and twelfth paragraphs of instructions given, which said instructions are as follows:

"(4) You are further instructed that the presumption of innocence remains with the defendant, and is thrown around him for his protection up to the moment when the killing is proved or admitted. When the killing is proved or admitted, it then devolves upon the defendant to show any circumstances of mitigation to excuse or justify it by some proof strong enough to create in the minds of the jury a reasonable doubt of the defendant's guilt of the offense charged, unless the proof upon the part of the state shows the defendant was justified or excusable." (Excepted to by the defendant and exception allowed.)

"(12) The law gives to every person the right to fight in his self-defense to protect himself from the unlawful attacks of his adversary, and if necessary to save his life or to prevent great bodily injury he may take the life of his assailant, and is not required to desist or cease from the use of force until his adversary has entirely abandoned the conflict or has been disabled to such an extent that further force is unnecessary on the part of the person inflicting the injury.

"The law of self-defense is given a person for his protection, and it cannot be pleaded as a defense by one who himself is the aggressor, or who enters voluntarily into a difficulty armed with a deadly weapon, no matter in how much danger he may be placed in the course of the difficulty, nor how imminent it may become.

"In this connection you are further instructed that if the defendant, W. D. January, armed himself with a deadly weapon for the purpose of having a difficulty with the said Milton Keck, and having reason to believe that it would

or might result in death or serious bodily harm to defendant or said Milton Keck, or if said defendant sought to take the law into his own hands and kill said Milton Keck, then the defendant cannot plead self-defense in this case." (Excepted to by defendant and exception allowed.)

The defendant also excepted to parts of paragraphs 6, 14, 15, and 16 of instructions given, which said parts complained of are as follows:

No. 6: "You are instructed that a design to effect death is inferred from the killing," etc.

No. 14: "If from all the evidence in the case there is a reasonable doubt in your minds as to the sanity of the defendant when he killed Milton Keck," etc.

No. 15: "If there is a reasonable doubt in your minds that the brain of the defendant, W. D. January, at the time he killed said Milton Keck," etc.

No. 16: "At the time he killed said Milton Keck," etc.

There were several requested instructions which were refused and their refusal excepted to, which we do not think essential to set out. The defendant moved for a new trial, which was overruled, and exceptions saved.

The defendant insists that the court committed prejudicial error in overruling the demurrer to the indictment. With this contention we cannot agree. The information contains every averment essential to charge the crime of murder in plain, concise, and intelligent language, and informed the defendant precisely what he must be prepared to meet, was sufficient, and the court did not err in overruling the demurrer thereto. *Teague v. State,* 13 Okla. Cr. 270, 163 Pac. 954.

"An indictment is sufficient if the offense charged therein is clearly set forth in ordinary and concise language, without repetition, and in such manner as to enable

a person of common understanding to know what is intended thereby." *Starr v. State,* 9 Okla. Cr. 210, 131 Pac. 542.

In *Deen v. State,* 7 Okla. Cr. 150, 122 Pac. 341, Judge Doyle, speaking for the court, said:

"An information is sufficient which states the facts clearly and distinctly, in ordinary and concise language and without repetition, and which, construed under the ordinary rules of construction of the English language, would enable a person of common understanding to know what was meant, and apprise the defendant of the exact nature of the offense with which he was charged, although the same does not contain all the phraseology and technical language ordinarily used in criminal pleading."

A most careful reading and consideration of the evidence fails to convince us that the contention of the defendant "that legal evidence was excluded or that illegal evidence was admitted" to the prejudice of the defendant, is well founded.

We do not think that the extraordinary probing by the defendant as to appointment of and action of the jury commissioners in drawing the panel against which the motion to quash was directed disclosed, any irregularity which resulted in depriving the defendant of any substantial right, or was reasonably calculated to do so. The statute governing the appointment of the jury commissioners and their action is merely directory, and a substantial compliance with the statute is sufficient. Section 3701, Revised Laws 1910; *Wadsworth v. State,* 9 Okla. Cr. 84, 130 Pac. 808. The court did not err in overruling the motion to quash the jury panel.

It is insisted that the *corpus delicti* was not proven beyond a reasonable doubt. With this insistence we cannot agree.

That the defendant shot the deceased as alleged in the information is not only conclusively shown by the evidence, but it is also shown that the defendant admitted the shooting, and that the deceased, after the last three shots were fired, jumped out of the buggy in which he was seated, took one or two steps, fell on the frozen ground, and expired almost immediately. The location of the bullets which entered the body of the deceased was shown, and was of the character to produce death. Certainly, notwithstanding no expert testimony was introduced as to the cause of death, there was sufficient evidence to show beyond a reasonable doubt that the deceased came to his death at the hands of the defendant by shooting, and we think that the suggestion that the deceased may have come to his death by falling from the buggy upon the frozen ground is utterly untenable.

The defendant complains that the evidence fully sustains the plea of insanity, and that the defendant should have been found not guilty on that ground. The plea of insanity presented an issue of fact entirely for the consideration and determination of the jury, and there being evidence of the sanity of the defendant at the time of the shooting, we are powerless to set aside the finding of the jury; there being necessarily included in their finding of guilty that the defendant was sane at the time of the killing.

The clothing worn by the deceased at the time he was shot was properly admitted in evidence. *Morris v. State,* 6 Okla. Cr. 29, 115 Pac. 1030; *Saunders v. State,* 4 Okla. Cr. 264, 111 Pac. 965, Ann. Cas. 1912B, 766.

Instructions must be considered as a whole, and certainly parts of paragraphs of instructions cannot be intelligently considered, and when this is done we are unable

to see that paragraphs 4 and 12 of the instructions are not fair statements of the law, or that paragraphs 6, 14, 15, and 16 of the instructions complained of invade the province of the jury. The cause of death not being an issue of fact in the case, the question was, Did the defendant act in self-defense or was he insane at the time of the killing? and the court might have properly so instructed the jury. Again, the cause of the death of the deceased is conceded by the defendant. Hence it cannot be said that the paragraphs and parts of paragraphs of the instructions complained of constituted fundamental error.

We have carefully considered the requested instructions refused, and are of the opinion that the court did not err in refusing to give either one of the requested instructions.

Under the holding of this court in *Corliss v. State,* 12 Okla. Cr. 526, 159 Pac. 1015, cited by the defendant, a technical error was probably committed in the admission of the rebuttal testimony complained of. If error was thereby committed, it was not such error as to prejudice any material right of the defendant, and therefore would not entitle him to a reversal of the judgment.

It is finally complained that the county attorney was guilty of misconduct prejudicial to the defendant in his argument to the jury by adversely commenting upon the personal appearance of the defendant; he not being a witness in the case. We do not think that the remarks complained of were within the realm of legitimate argument, but the record does not disclose that the remarks were excepted to or that the court was requested to instruct the jury to disregard them. Hence the question is not properly here for review.

The unpardonable wrong done the defendant's daughter by the deceased does not constitute a defense to the crime for which the defendant was convicted. The so-called unwritten law referred to in the brief of counsel for the defendant—that is, "the right to avenge a wrong done a female member of one's family by killing the wrongdoer" —does not exist in this jurisdiction.

Neither do the courts of this state possess the pardoning power. If the due execution of the law has worked a result entitling the defendant to relief on account of the palliating circumstances in this case, such relief can only be had by way of executive clemency.

A reversal of a judgment of conviction in this class of cases can only be based upon legal grounds. There being no such error disclosed by the record in this case, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.