## MACE HERNDON v. STATE.

No. A-3190.   Opinion Filed December 15, 1919.

(185 Pac. 701)

1.  **GRAND JURY—Substantial Compliance with Statutes.** The law of this state in regard to selecting, summoning, and impaneling grand juries is directory, and a substantial compliance therewith is sufficient.

2.  **APPEAL AND ERROR—Discretionary Rulings—Continuance.** An assignment of error based upon the denial of a continuance will not be sustained unless it affirmatively appears that the court in denying such request abused its discretion.

3.  **CONTINUANCE—Denial—Absent Witness.** It is not error to overrule a motion for continuance on account of an absent witness, where the testimony stated in the motion to which such absent witness would testify is not admissible evidence or does not tend to establish the innocence of the accused.

4.  **INDICTMENT AND INFORMATION—Demurrer to Indictment Containing a Good Count.** When an indictment contains two counts, one of which is defective and the other is not, a demurrer directed to the entire indictment should be overruled.

5.  **APPEAL AND ERROR—Harmless Error—Demurrer to Indictment.** When an indictment containing two counts is demurred to, and one of the said counts is sufficient and the other insufficient, and the court overrules a demurrer to the defective count, and thereafter the state elects to stand upon the sufficient count, the overruling of the demurrer to said defective count becomes harmless error.

6.  **EVIDENCE—Admissibility of Evidence of Similar Offenses.** Evidence of offenses of similar nature committed by an accused, other than the specific offense for which he is being tried, may be properly admitted in evidence to show the intent of the accused, notwithstanding such evidence tends to prove accused guilty of other and distinct offenses; the field of operation of such evidence to be confined by the instructions of the court to the jury alone to establish intent or some element of the offense charged.

7.  **STATUTES—Revised Laws—Law of State.** The Revised Laws 1910, commonly known as the "Harris-Day Code," including new legislation suggested by the codifiers and adopted by the Legislature of this state by chapter 39, Sess. Laws 1910-11, as amended

by chapter 75, Sess. Laws 1913, is the established law of this state regularly and constitutionally adopted.

*Appeal from District Court, Seminole County;*

*J. W. Bolen, Judge.*

Mace Herndon was convicted of embezzlement of public school funds when County Treasurer of Seminole County, and he appeals. Affirmed.

*Fowler & Biggers* and *Pryor & Stokes,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Mace Herndon, hereinafter called defendant, was indicted for the embezzlement of public school funds received from Hughes county for account of consolidated school districts 12 and 50, while county treasurer of Seminole· county, found guilty, and his punishment fixed at imprisonment in the penitentiary for a term of three years and a fine of $1,248.18. To reverse the judgment rendered, he appeals.

The defendant has not set out in his brief an abridgment of the evidence as required by the rules of this court, and explanatory of his failure so to do says "that to do so would cause this brief to be as large as the case-made." The case-made contains 740 pages of typewritten matter. We set out only the material evidence.

The defendant was the duly elected, qualified, and acting county treasurer of Seminole county. There were consolidated school districts numbered, respectively, 12 and 50, composing a part of Hughes county and a part of Seminole county; the greater part of said school districts being in Seminole county. The taxes in support of said school districts in part were collected in Hughes county

and warrants therefor in the aggregate sum of $642.09 were drawn by the proper officer, forwarded to and received by the defendant as such county treasurer of Seminole county. The defendant took one of said warrants to a bank in Wewoka, and received for it a check on the Farmers' National Bank, and placed the other of said warrants in a bank for collection; the defendant receiving for the two warrants the sum of $642.09, which said receipt by him was not entered on the records of his office as treasurer. The proceeds of the two warrants were held by the defendant until about the 15th of August, 1914, at which time the proceeds were deposited by him with the Farmers' National Bank to the credit of "Mace Herndon, Escrow," where the deposit remained until about the 18th day of September, 1915. After the terms of the defendant as county treasurer of Seminole county had expired, he drew a check on the account in favor of himself and cashed it, and also a check for $116.56 in settlement of an alleged embezzlement committed by his deputy. Each of these checks was drawn on this deposit of $642.09. He drew a check for the remainder of the deposit and deposited it and other moneys in the First State Bank of Seminole, the total sum deposited amounting to $995.74. In January, 1916, prior to the finding of the indictment in this case, the state examiner of public accounts was pushing the defendant on account of his actions as county treasurer, and on the 13th day of January, 1916, the defendant wrote a letter to the then county treasurer of Seminole county and inclosed to him a check for $995.74, and told him that he owed the money and how he wanted it applied, but did not direct any of the said $995.74 to be applied on account of consolidated school districts 12

and 50 for the warrants he had received from Hughes county.

. The defendant filed a motion to quash the indictment, and introduced voluminous evidence to show that the jury finding the indictment had not been selected, drawn, and impaneled as required by law and was an illegal grand jury. The court overruled the motion, and defendant excepted.

The defendant then demurred to the indictment, which contained two counts, upon the grounds: (1) That it fails to state facts constituting a public offense. (2) "That the statute under which the indictment was found is unconstitutional upon the ground that section 7437, Harris-Day Code, is one that was added in its entirety by the Code Commission and not adopted by the Legislature in the manner required by the Constitution." The court overruled the demurrer, and the defendant excepted.

The defendant filed a motion for continuance on account of the absence of E. L. Sebastian, setting up all the averments required to be contained in such motion, including a statement at length of what the absent witness would testify to. The court overruled the motion, and the defendant excepted.

·The defendant also objected to the introduction in evidence of the books of the county treasurer's office, upon the ground that the entries made in said books were not made in the handwriting of the defendant, and because it is not shown that the entries were made with his knowledge or under his direction. The court overruled the objection and admitted numerous entries shown upon the books, to which the defendant excepted.

The defendant also objected to the admission of evidence of other embezzlements committed by him while he was county treasurer, other than the specific embezzlements charged in the indictment. The court overruled the objection and admitted the evidence, to which defendant duly excepted.

Upon the conclusion of the evidence, the defendant asked the court to give the jury instruction numbered 1, which reads:

"Gentlemen of the jury, in this case there has been testimony introduced regarding transactions other than the charge in the indictment, said transaction having been testified to by T. B. Terry and Count Dunaway, whom the court instructs you are in law termed accomplices under their own testimony, and you are instructed that the law forbids the conviction of one accused of crime upon the uncorroborated evidence of accomplices, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. To warrant a conviction upon the testimony of an accomplice, there must be corroborating evidence tending to incriminate the accused, aside from and without the aid of testimony of the accomplice; and in this connection you are further instructed that these transactions testified to by T. B. Terry and Count Dunaway were admitted solely and only for your consideration in arriving at the motive or intent actuating him in committing the act for which he stands charged. You are further instructed that, before you can consider the testimony of Count Dunaway or T. B. Terry, you must find and believe beyond a reasonable doubt that said transactions were criminal, and that the defendant participated in said transactions, and then the same can only be considered by you, and you are only at liberty to use it in the act for which he is now on trial, if you find beyond a reasonable doubt that he committed such act."

The court refused to give said requested instruction, and the defendant excepted.

Together with other instructions, the court gave the jury instructions numbered 5 and 9, respectively, which said instructions read as follows:

"No. 5. You are instructed that other transactions have been introduced in this case which, as claimed by the state, tend to show the commission of other crimes, by the defendant, and in this connection you are instructed that such evidence has been submitted for your consideration for the purpose of showing the intent and purpose of the defendant regarding his act or acts, if any, in connection with the crime charged; and for the further purpose of ascertaining whether or not the defendant, together with other parties, was engaged in a plan or system to defraud the state of Oklahoma, county of Seminole, and each political subdivision thereof, including joint school districts 12 and 50, and that the crime charged was a part of that system and for no other purpose. You are instructed that if you believe that the defendant had committed other crimes besides the crime charged in the indictment, but do not believe beyond a reasonable doubt that he committed the crime charged in the indictment, then it would be your duty to acquit the defendant."

"No. 9. Gentlemen of the jury, you occupy in this case one of the most important positions that could be occupied by a citizen of this county and state, and obligated by your solemn oath which calls for the exercise of your best integrity and highest manhood. You do not represent the state, neither do you represent the defendant; but you represent the law, which demands exact justice, sacred honor, and elevated manhood in the exercise of your solemn duty, and which cherishes and upholds as sacred the right of a fair and impartial trial to the defendant and to the state. And in this case if you allow sympathy, avoidance of duty, or any other outside influence, except the law and the evidence that you have

listened to from the witness stand, to enter into your deliberations and have any effect whatever in the formulation of your conclusions which will be written into your verdict, you have not reached that high plane of official duty and unswerving manhood that the law demands.

"In the discharge of your duty it requires courage, integrity, analysis, and good common sense, and when you have fully exercised these and reached an honest conclusion that your judgment and your conscience approve, then without fear or favor write your verdict, and you will have nobly discharged your duty as a representative of a just and inflexible law that is higher and bigger than all of us, and to which all must bow in humble submission.

"Do not allow fear or favor, prejudice or passion, to divert you from the path of sacred duty and exalted obligation, both to the defendant and to the state; but let your verdict be a reflection of your soundness of reasoning and good conscience, and then the law will be satisfied."

Within the time provided by law, the defendant made a motion for a new trial, which the court overruled, and the defendant excepted.

It is contended by the defendant that irregularities committed by the jury commission in selecting, and the action of the trial court in impaneling, the grand jury which preferred the indictment in this case, rendered the indictment an illegal one, and he insists that the court committed reversible error in overruling the motion to quash the indictment. We have carefully considered the entire evidence offered on the motion to quash the indictment and are impressed that it does not disclose any act or failure to act on the part of the jury commission in selecting the jurors, or on the part of the trial judge in

impaneling the grand jury, which should vitiate the indictment, or that in selecting or impaneling the grand jury any substantial right of the defendant was violated.

"The law of this state in regard to selecting, summoning, and impaneling a grand jury is directory, and a substantial compliance therewith is sufficient." *Middleton v. State,* 16 Okla. Cr. 320, 183 Pac. 626.

The holding in *Middleton v. State, supra,* finds direct support in *Hopkins v. State,* 4 Okla. Cr. 194, 108 Pac. 420, 111 Pac. 947; *Wells v. State,* 5 Okla. Cr. 22, 113 Pac. 210; *State v. Pollock,* 5 Okla. Cr. 26, 113 Pac. 207; *Tegeler v. State,* 9 Okla. Cr. 139, 130 Pac. 1164; and in many of the decisions of the courts of last resort of other states of this Union. The reason for the rule is correctly expressed in 12 R. C. L. pp. 1016, 1017, as follows:

"The reason of this rule is that as the grand jurors do not try the case, but merely charge the accused, the manner of their selection is of no consequence to him, he being entitled to claim only fair and impartial grand jurors who possess the necessary qualifications, whereas it is of great consequence that the administration of justice shall not be delayed by mere technical objections. Such statutes need not be followed with technical or literal strictness. A substantial compliance is all that is required, and mere irregularities in the drawing and selecting do not invalidate the grand jury's action."

The defendant further insists that the court committed reversible error in overruling his motion for a continuance on account of the absence of the witness E. L. Sebastian. We have carefully read and considered what it is alleged in the motion for continuance the witness, if present, would testify to, and are unable to see how such testimony could have aided in the defense of the defendant of the charge of which he was convicted. It was en-

tirely immaterial how the management of the warrants in question perplexed the defendant and his deputy and the details of how the same was handled, the important question being the conversion of the proceeds of said school warrants to the personal use of the defendant. The court did not abuse its discretion in overruling this motion.

It is next urged by the defendant that the court committed reversible error in overruling the demurrer to the indictment. The indictment contains two counts, and the state having elected to stand upon the second count, and the jury having found the defendant guilty as charged in the second count, it is entirely immaterial whether or not the first count was sufficient, and we will not discuss the same. The second count of the indictment charges every element of an embezzlement of public funds and fully informs the defendant of the offense he is called upon to answer and was entirely sufficient.

"Again, where an indictment contains two counts, even though one of them be demurrable, a demurrer directed to the entire indictment should be overruled." 14 R. C. L. sec. 45, p. 202.

"A general demurrer to an indictment containing several counts, one of which is good, may be overruled entirely." *Ingram v. State,* 39 Ala. 247, 84 Am. Dec. 782.

The attack of the defendant upon the indictment, on the ground that the section of the Revised Laws upon which the prosecution is based is unconstitutional and void because inserted in the Code by the Code Commission and not previously enacted by the Legislature, we think not well grounded. Revised Laws 1910, commonly known as the "Harris-Day Code," was adopted as a whole by chapter 75, p. 116, Session Laws 1913, which amended

chapter 39, p. 70, Session Laws 1910-11, and this the Legislature could do under virtue of section 57, art. 5, of the Constitution, without violating the Constitution, and it was only necessary to read the act adopting the Code and not the Code, to legally comply with section 34, art. 5, of the Constitution. The fact that the section of the Code attacked was inserted by the Code Commission was not material. It was the adoption of the Code by the Legislature after such section was inserted therein that made said section law.

In *Central of Georgia Railroad Co. v. State of Georgia,* 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518, it is held:

"(2) The intention of the act of December 16, 1895, adopting the present Code, and making the same of force, as the Code of Georgia, is to enact into one statute all provisions embraced in that Code.

"(3) This act is not unconstitutional because it did not incorporate in its body the various sections of the Code, nor because these sections were not read three times and on three separate days in each house of the General Assembly before the passage of the act.

"(4) The act in question does not, within the meaning of * * * the Constitution of Georgia, refer to more than one subject-matter, nor does it contain matter different from what is expressed in the title thereof.

"(5) The effect of this act is to make a part of the law of the state all new matter embodied in the Code of 1895 which could be constitutionally enacted by the Legislature. It follows therefore that an act, though unconstitutional as originally passed, on account of containing matter different from what was expressed in its title, if otherwise constitutional, became valid law by its incorporation in the present Code, upon the passage of the act first above mentioned."

In the body of this most thoroughly considered and ably discussed case, Justice Lewis, speaking for the court, says:

"Whenever the Legislature, therefore, employs such words as 'adopting a Code,' no other legitimate or reasonable construction can be given the language itself than an intention to enact and make of force as a statute every provision in the entire work; * *. * the legislative purpose being to enact into law every provision contained in the Code, including such new matter as was introduced, as well as such changes and modifications as were clearly made in existing laws. * * *

"There is quite a difference between a Code of Laws for a state and a compilation in a revised form of its statutes. The Code is broader in its scope and more comprehensive in its purpose. Its general object is to embody as clearly as practicable all the laws of a state from whatever source derived. When properly adopted by the lawmaking power of a state, it has the same effect as one general act of the Legislature containing all the provisions embraced in the volume."

The defendant further complains that the court committed reversible error in admitting in evidence entries and want of entries as shown by the books of the county treasurer at the time the defendant was the incumbent of said office, for the reason "that the entries were not made in the handwriting of the defendant, or with his knowledge." This complaint we think without merit. Section 5115, Revised Laws, fixes the admissibility of this evidence. If the entries admitted in evidence were not correct or were susceptible of an innocent explanation, the defendant could have offered evidence pointing out that the entries were not correct, or explaining away the same in so far as they tended to criminate him.

It is also insisted that the court committed reversible error in admitting evidence tending to show the commission of embezzlements by the defendant while county treasurer other than the specific embezzlement charged in the indictment. This contention is not well founded.

When, as in the instant case, the jury are properly instructed as to the field of operation to which such evidence is confined, evidence of other offenses similar to the offense charged in the indictment is admissible, where it shows guilty knowledge or intent in the commission of the offense charged, or a system or plan embracing more than one act so closely connected that proof of one tends to establish the other or the connection of the accused therewith.

In the well-considered opinion of Judge Doyle in *State v. Rule*, 11 Okla. Cr. 237, 144 Pac. 807, it is held:

"(1) As a general rule, evidence of other offenses, though of the same nature, is not admissible for the purpose of showing that the defendant is guilty of the particular offense charged. To this rule, however, there are well-settled exceptions. Those applicable to the question presented on the record in this case are as follows:

"(b) Evidence that tends directly to prove the defendant's guilt is not rendered inadmissible because it proves or tends to prove him guilty of another and distinct offense.

"(c) Evidence of a different offense from the one charged is admissible when both offenses are so closely linked or connected as to form a part of the *res gestae*.

"(d) Evidence of other offenses is competent to prove the specific offense charged when it tends to establish a systematic scheme or plan embracing the commission of two or more offenses so related to each other that

proof of one tends to establish the other, or to connect the defendant with the commission of the offense charged."

Again, the defendant complains that the evidence is sufficient to sustain the verdict rendered. With this complaint we are not in accord. We have carefully read the evidence and think it sufficient to support the verdict rendered. This court in many cases has announced and reaffirmed the rule that, where there is any competent evidence tending to reasonably support a verdict, this court will not reverse a judgment for want of evidence.

The defendant further complains that the court committed reversible error in refusing to give requested instruction numbered 1. This complaint is without merit. There was no evidence given tending to show that there was an accomplice in the commission of the embezzlement charged.

"An instruction should never be given upon any question of law which is not applicable to the evidence." *Inklebarger v. State*, 8 Okla. Cr. 316, 127 Pac. 710.

We are of the opinion that instruction numbered 5 given the jury, when considered in connection with the entire instructions given, as it must be, correctly states the law.

While instruction numbered 9 given the jury may not have "been necessary for their information in giving their verdict" (section 5905, Revised Laws), we do not think that the giving of said instruction was a reversible error.

The defendant had a fair and impartial trial, was ably defended in the trial court by learned attorneys, and on this appeal was represented with great zeal and ability. There is no error disclosed by the record sufficient

to warrant a reversal of the judgment of the trial court. It is therefore affirmed.

DOYLE, P. J., and MATSON, J., concur.