## HARRY SLEDGE v. STATE.

No. A-5966. Opinion Filed June 12, 1928.
Rehearing Denied Aug. 22, 1928.
(269 Pac. 385.)

422

See, also, 30 Okla. Cr. 160, 234 P. 1117.

Womack, Brown & Cund, for plaintiff in error.

The Attorney General and Leverett Edwards, Asst. Atty. Gen., for the State.

DOYLE, P. J. Appellant, Harry Sledge, was convicted in the district court of Jefferson county, on a change of venue from Stephens county, of the crime of rape in the first degree, and his punishment assessed at imprisonment in the state penitentiary for a term of 35 years. Upon this appeal from the judgment rendered in pursuance of the verdict, various errors are assigned, among which is the overruling of appellant's motion to have the case set for trial at the September, 1925, term of court.

It appears from the record that the preliminary examination was held March 13, 1925; that on March 23 an information was filed in the district court of Stephens county jointly charging appellant, Harry Sledge, together with Bill Brown and Ted Elliott, with the crime of rape in the first degree, alleged to have been committed on the person of one Ethel Sreywas February 12, 1925.

A motion for change of venue on the ground of prej-

udice was made and granted, and on the 10th day of April, 1925, the papers in said cause were transmitted by the court clerk of Stephens county to the court clerk of Jefferson county. On May 4th, appellant asked for and was granted a severance. On the granting of the severance, appellant made a motion to have the case set for trial at the September term of court, beginning September 7, 1925. On May 15th, the motion was by the court overruled, and the case set for trial June 15, 1925.

The refusal to continue the cause on application of appellant and set it for trial at the September term on the ground that under the statute the court had no jurisdiction to try the cause at the regular March, 1925, term of the district court of Jefferson county is assigned as error.

Our Code (section 2634, C. O. S. 1921) provides that, on a change of venue—

"the order of removal from the county must be entered upon the minutes and the clerk must thereupon make out, and within ten days transmit to the county to which the action is removed, a certified copy of the order of removal, and the record, and shall transmit the pleadings, including the undertaking for the appearance of the defendant, and of the witnesses, and the cause must be docketed and stand for trial at the first term of court after the cause has been transferred."

It is contended by counsel for appellant that the last clause of the above section, "and the cause must be docketed and stand for trial at the first term of court after the cause has been transferred," means that a term of court must intervene between the transfer and the trial of the cause, and that the district court of Jefferson county was without jurisdiction to try the cause before the next term after the cause has been transferred.

We think this contention is without merit. The ob-

ject in construing statutes is to ascertain the legislative intent. That constitutes the law. If the language be clear, it is conclusive. There can be no construction where there is nothing to construe.

It is clear that, by the words, "first term of court," used in the statute, was meant the term at which the cause was transferred and docketed on the change of venue. Otherwise stated, the words, the "first term," means the immediate term, the present term, as contrasted with the phrase, "next term," meaning a succeeding term.

A change of venue is never allowed as a means of delaying the trial of a cause, and the application should be denied if it appears that it was merely for the purpose of delay. To construe the words of the statute above quoted as meaning the succeeding term would be in derogation of the constitutional right of the accused to a speedy trial. Const. Art. 2, § 20.

Our Code (section 2638) specifically provides:

"The court to which the action is removed must proceed to trial and judgment therein the same in all respects as if the action had been commenced in such court."

The transfer of the cause by change of venue took with it the whole cause and every incident belonging thereto to the district court of Jefferson county. Holcomb v. State, 16 Okla. Cr. 1, 166 P. 755.

It is our opinion that the defendant's application to docket the cause for the September term of court was properly overruled.

When the case was called for trial, the defendant moved for a continuance because of the absence of Bill Anderson, one of his witnesses for whom a subpoena had

issued and returned not found, and stating, in substance, that this witness, if present, would testify that he roomed with an old lady by the name of Leahy, on West Seventh street, in Duncan; that Ethel and Lillian Sreywas were rooming there at the time it is alleged that the defendant raped Ethel; that he saw her there the next morning and passed a few words with her, and she appeared to be all right except that she had a bruised place under one eye; "that he had opportunity to observe the conduct of Ethel Sreywas, and had heard her curse and use vile, vulgar and obscene language, and that she had made indecent and improper advancements to him; that the above facts are relevant because they tend to corroborate the defendant's statement and evidence that the act of sexual intercourse charged in the information was had with the prosecuting witness with her consent, and tends to discredit the testimony of the prosecuting witness that the act charged was by force and without consent."

It is contended that the court erred in overruling the defendant's application for a continuance. An application for a continuance in a criminal case is addressed to the sound discretion of the trial court, and, unless it clearly appears that there has been an abuse of such discretion, this court will not reverse the judgment for refusal to grant the continuance. The rule is so well established that citation of authorities in its support are unnecessary.

In this case the application shows a want of diligence to have the witness in attendance upon the trial. The mere issuance of a subpoena is not due diligence in procuring the attendance of a witness, and the application does not state the witness is not absent with the consent or by the procurement of the defendant. It follows that the ruling of the court was not only within

its discretion, but was proper by reason of the insufficiency of the application.

The following brief statement of the facts which we gather from the evidence will answer the purpose of our consideration of the remaining assignments:

Appellant, Harry Sledge, a single man, 20 years of age, lived on the Sledge place, north and within half a mile of the city of Duncan. The prosecutrix, Ethel Sreywas, 18 years of age, lived with her two sisters in the city of Duncan. On the evening of February 22, 1925, the prosecutrix and her sister Lillian, 20 years old, were walking along the street in Duncan when the defendants, in a Ford coupe, drew up to the curb and invited them to go riding with them. They were acquainted with the defendant Ted Elliott, and he introduced the prosecutrix and her sister to the other two defendants. The girls declined the invitation, saying that they had to do some shopping. Then Ted Elliott asked if they could come to the house, and the prosecutrix told them they would be at home in 30 minutes. The girls went on down the street, did their shopping, and returned to their home. The defendants drove up in the coupe, Ted Elliott went up on the porch and asked the girls to go to Harry Sledge's home, and they would play the Victrola and dance; that they would go by and get Billy Morrison. Harry Sledge said he had a girl he could get, and they would go by and get her. The prosecutrix consented to go, and she got in the car with them. They went to Billy Morrisson's and got her; then to a house they called Fern's place. Harry Sledge went in. When he came back he said Fern was sick and could not go. Then they proceeded to the home of Harry Sledge.

The testimony of the prosecutrix as to what occurred at the Sledge home is to the effect: That, after

they parked the car in front of the house, near the porch, Harry Sledge went in and lit the lights; then Ted Elliott went in and came back and told Bill Brown to get out and come in and bring his girl, and she got out of the car and went in with Ted Elliott; that a few minutes later, while standing in the middle room, she heard Billy Morrison scream. Ted Elliott left the room, and she asked Bill Brown to take her home, and started out the room with him, when Harry Sledge came in, walked between them, and said, "Bill, let me have your girl." Some one closed the room door and she asked Harry Sledge to take her home. Then she heard the car drive off, and Harry Sledge turned out the light and told her everybody was gone. Then he threw her down on a cot and commenced to choke her. That she kicked him and bit the side of his face. He said, "I will kill you or do what I started to." That she screamed every time he let loose of her throat, and did everything she could to get loose from him, until she became helpless, and by overcoming her utmost resistance he accomplished an act of sexual intercourse. That he then got up and turned on the light. That her whole head and face were covered with blood. He said, "Get up from there and wash that blood off, or you won't go home until morning." That she went into the kitchen, and washed her face. Then Ted Elliott came into the kitchen, and he washed her face. They went back to the middle room, and Billy Morrison and Bill Brown came in. That after some talk Harry Sledge said, "You better take the girls and go home before there is any further trouble"; and Bill Brown, Ted Elliott, and Billy Morrison took her home. That she told her sister Lillian what had occurred, and she telephoned for Dr. McGregory, and shortly afterwards he called and examined and treated her, and

she was under his care and that of two other physicians for the next three weeks.

Against the defendant's objections, she identified a blood-stained undergarment as the garment worn by her on the night when the alleged offense was committed, and the same was exhibited before the jury.

The court also permitted Drs. McGregory, Bartley, and Long, physicians attending the prosecutrix, to identify the blood-stained undergarment as the garment worn by the prosecutrix at the time they were called to treat her, to all of which the defendant objected.

It is argued that there was no issue in the case which the garment would tend to prove or disprove, and that its admission in evidence was highly prejudicial as tending to inflame the minds of the jury against the defendant.

We think the garment in question was clearly admissible as tending to show whether or not the act was voluntary, or whether force and violence were used by the defendant to accomplish his purpose.

It has been repeatedly held by this court that it is permissible to exhibit to the jury and to formally introduce in evidence physical objects which form a part of or serve to illustrate the transaction or occurrence upon which the accusation is based. January v. State, 16 Okla. Cr. 166, 181 P. 514; Burton v. State, 16 Okla. Cr. 602, 185 P. 842; Jones v. State, 17 Okla. Cr. 561, 190 P. 887; Saunders v. State, 4 Okla. Cr. 264, 111 P. 965, Ann. Cas. 1912B, 766.

Generally speaking, the time and manner in which objects of this character shall be displayed in the presence of the jury is a matter within the sound discretion

of the court, and its discretion will not be interfered with unless abused with prejudicial consequences.

On the record before us, we are unable to see anything sufficient to warrant us in holding that such discretion was abused in the present case.

Billy Morrison, as a witness for the state, testified: That the party arrived at the Sledge farmhouse a little after 10 o'clock. That they gathered in the middle room of the house. That she went into the front room to see Bill Brown. Harry Sledge followed her and shut the door leading out on the porch. That she asked him why he did that, and asked him to take her home, and he began choking her, and she screamed. Then Ted Elliott came into the room, and she asked him to make Harry Sledge leave her alone. That she stood there crying, and Bill Brown came out of the middle room, and she went out with him, and they sat down on the front porch. That she heard some one fall, and heard Ethel Sreywas screaming. She further testified as follows:

"Go ahead, Miss Morrison, and tell the jury how many screams you heard and how long it continued? A. Ethel screamed continuously after she started screaming for a long time, and I tried to get Bill Brown to go in and help her out.

"The Court: Objection sustained as to anything she said to Bill Brown.

"Q. All right, Miss Morrison, what did you do then and what did Bill do? A. He refused to let me go in or would not let me go in.

"Counsel for defendant: We object to that question and move that the answer be stricken as incompetent, irrelevant, and immaterial as to what Bill Brown wouldn't do?

"By the Court: Overruled."

It is argued that this conversation with the Morrison girl was without the presence and not in the hearing of the defendant, and therefore would be hearsay, and that the court committed reversible error in admitting evidence that the defendant Sledge made an assault upon the witness Billy Morrison just previous to the time he assaulted Ethel Sreywas.

The testimony objected to was admitted by the court under the theory of the state that the defendants were acting in concert, with a common purpose and intent, in the commission of the crime charged.

The general rule is that, where there is evidence of conspiracy to commit a crime, and of its subsequent commission, the prosecution may, in support and corroboration thereof, show acts, declarations, or conduct of the alleged conspirators intermediate of the conspiracy and the crime which apparently recognizes the existence of the conspiracy, or reasonably indicates preparation or motive to commit the crime. Irwin v. State, 11 Okla. Cr. 301, 146 P. 453.

In the case of Smith v. State, 19 Okla. Cr. 386, 200 P. 553, this court said:

"It is true this evidence was admissible against appellant only upon the theory that all the defendants had conspired together to do an unlawful act. Conspiracies are often difficult to prove by direct testimony, and rarely can any express understanding or agreement be shown. Their existence is more often shown as in this case by the proof of circumstances, the concurrence of which leads one to believe that the parties were acting in concert with a common purpose to do an unlawful act. Large latitude is allowed necessarily in proof of a conspiracy, and the jury should be permitted to have before them all the facts which will enable them to come to a correct conclusion. The

rule in such cases is well defined, and has been announced in a number of the decisions of this court. Starr v. State, 5 Okla. Cr. 440, 115 P. 356."

As a general rule, any act of the defendant may be admitted in evidence against him, provided it has any logical or legal tendency to prove any matter which is in issue.

Evidence that tends directly to prove the defendant's guilt is not rendered inadmissible because it proves or tends to prove him guilty of another and distinct offense.

Evidence of a different offense from the one charged is admissible when both offenses are so closely linked or connected as to form a part of the res gestae. State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Herndon v. State, 16 Okla. Cr. 586, 185 P. 701; Austin v. State, 28 Okla. Cr. 73, 228 P. 1113. In our opinion the evidence objected to is clearly a part of the res gestae, and the objections thereto were properly overruled.

A number of exceptions are reserved to the rulings of the court in giving and refusing instructions.

The testimony of the defendant in his own behalf was to the effect that, in the beginning, the prosecutrix consented, but in the course of the act she resisted. The instruction on this theory of the defense by the court is as follows:

"No. 8. Gentlemen of the jury, you are instructed that, if you believe from the evidence in this case that the prosecuting witness, Ethel Sreywas, consented or yielded, by her acts or otherwise, to the commencement of the act of intercourse, then the defendant would not be guilty of rape, and, if you so find, or entertain a reasonable doubt concerning the same, then you should resolve the doubt in favor of the defendant and acquit him."

Upon careful examination, we find that the instructions given by the court fully, fairly, and correctly state the law of the case, and for this reason the court did not err in refusing to give the instructions requested by the defendant.

Finally it is contended that the verdict is vindictive and the punishment assessed is excessive, unreasonable, and appears to have been given under the influence of passion and prejudice, which had been aroused and brought about by the conduct of attorneys representing the state.

We cannot see how any jury under the evidence could have returned a verdict otherwise than one of guilty. However, it is both the spirit and intention of our laws that punishment shall be imposed in criminal cases for the protection of society and the reformation of the criminal, and sentence should be imposed in keeping with the spirit of the law. Spears v. State, 10 Okla. Cr. 563, 139 P. 841. Williams v. State, 19 Okla. Cr. 307, 199 P. 400.

In view of the fact that the defendant had not attained his majority and other facts and circumstances as shown by the record, we are inclined to think that the punishment imposed is excessive, and that the judgment and sentence should be modified by changing the term of imprisonment from 35 years to 25 years. Carrying the sentence thus modified into execution may serve to teach him and others that the majesty of the law protects the weak and helpless as well as the strong, and possibly imbue him with some other and better notions than of those only of gratifying his lust and sensual passions.

The judgment and sentence herein will therefore be modified by reducing the sentence to a term of 25

years' imprisonment in the penitentiary, and, as thus modified, the judgment of conviction is affirmed.

EDWARDS and DAVENPORT, JJ., concur.