## CHOICE PICKETT v. STATE.

No. A-6172. Opinion Filed June 23, 1928.
(268 Pac. 732.)

Wilkinson & Saye and C. C. Wilkinson, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, Choice Pickett, hereinafter called defendant, was informed against for the murder of Maxie Sewell, convicted, and sentenced to imprisonment in the penitentiary at hard labor for a period of 11 years. To reverse the judgment rendered, he prosecutes this appeal.

Many witnesses were called on behalf of the state, but we do not deem it necessary to set out all of their testimony. The testimony, in substance, shows that the deceased, Maxie Sewell, ran a service car, and on the 29th day of August, 1925, had his car parked at the corner of Eighth and Main streets in Duncan, Okla., and deceased was near his car when defendant came along; the first thing the witnesses knew of any trouble was when they heard a shot fired. When they discovered who was doing the shooting, the defendant fired two other shots in rapid succession. So far as the witnesses know, nothing was said by the parties before the shooting began. After the defendant ceased shooting he was arrested and taken to jail; and the state offers testimony tending to show a statement made by the defendant, S. G. Moore testifying he was present when the statement was made to Mr. Long at the jail, and stated that he advised the defendant when he was arrested that any statement he made might be used against him. Witness was then asked by Mr. Wilkinson:

"Q. Did the county attorney or any of you people tell him the same thing up in the jail? A. I don't remember it.

"Q. As a matter of fact he was not warned by the county attorney or any one? A. I don't think he was."

He said he left home to kill Sewell; that when he found him he shot him. He said it was about half

an hour or an hour before he found him. Defendant said he did not say anything to Sewell nor Sewell say anything to him.

On cross-examination, the witness testified: That defendant was asked if he had talked it over with any one, and he said he had not. That he left home to kill Maxie Sewell, and "when I found him I shot him." He said nothing to Sewell nor Sewell to him. Jess asked what was the cause of the trouble—"About your sister?" and he said, "Yes."

The testimony on behalf of the defendant, in substance, is: The defendant as a witness in his own behalf stated at the time of the difficulty he lived about 6 miles south and three-quarters of a mile west of Duncan; that he had one brother and two sisters; that his oldest sister was named Opal, who was about 16 years of age; that he knew the deceased, Maxie Sewell, in his lifetime; that he shot Maxie Sewell on August 29, 1925, and killed him; that he came to town that day about 1 o'clock; that when he came down town the car of Maxie Sewell was at the corner of Eighth and Main streets; that, when he got near Sewell, Maxie was looking straight at him and reached over in his car with his left hand and threw his right hand "kindly up, and I shot him. I shot him because he intended to kill me. I shot him three times with a revolver, .32-20. I know the position he was in when I fired the first shot, but I do not know the position he was in when I fired the second and third. I continued to shoot until I saw him fall. When the deceased reached into his car and was looking straight at me, I thought he was going to take my life; I thought he was reaching in the car for a gun. I knew he was a jitney driver."

Defendant also testified as to having been in-

formed that Sewell was responsible for the seduction of his sister Opal, and that he had been informed that Sewell had threatened his life if he said anything about Sewell ruining his sister. Other witnesses testified in defendant's behalf as to Sewell having made the statement to them regarding the Picketts, and what he would do to them if they made any trouble for him on account of his having sexual intercourse with his sister Opal, and she becoming pregnant. Several witnesses testified as to the defendant's previous good character and to the bad character of the deceased. This is, in substance, the testimony of the witnesses for the state and for the defendant. There is little conflict in the testimony of the eyewitnesses as to what took place at the time of the shooting. The defendant contends that the deceased, while keeping his eyes upon the defendant, reached over into the car with his left arm, and at that time he believed the deceased was getting a gun to do him bodily harm or take his life; having been informed of the threat made by the deceased against him, he fired the shot that took the life of the deceased.

The defendant assigns several errors alleged to have been committed by the trial court. We will consider those errors as they have been argued by the defendant in his brief. The defendant argues at length that the court erred in permitting the county attorney to propound to the prospective jurors in this case improper and prejudicial questions, the effect of which was to pledge said jurors in advance to adopt the theory of the state in the case, which action of the court is and was excepted to. The question raised by the sixth assignment of error is that the county attorney, in examining the jurors on their voir dire, propounded the following question:

"Mr. McFarland: Q. If in the trial of this case the evidence convinces you beyond a reasonable doubt that the defendant, Choice Pickett, fired the fatal shot, at the time he fired the fatal shot fired the same without authority of law or without excuse of law, then would you let any other fact or circumstance influence you in arriving at your verdict?"

This question was excepted to by the defendant, and exceptions duly saved. The record does not contain the examination of the jurors in full upon their voir dire, nor does the record disclose that by reason of the questions propounded to the jurors, of which the defendant claims he was deprived of having a fair and impartial jury to try his case, nor does it show that he was forced to exhaust all of his challenges and then compelled to accept jurors who did not try the issues in his case fairly and impartially and give to him every doubt to which he was entitled under the laws of the state of Oklahoma. From the facts stated in the record, it does not appear that the question propounded to the jurors by the county attorney was prejudicial to the rights of the defendant, and the objection was properly overruled.

It is the duty of the appellant to present enough of the proceedings in the trial court to permit this court to pass safely and intelligently upon the questions presented. Star v. State, 9 Okla. Cr. 210, 131 P. 542; Johnson v. State, 21 Okla. Cr. 17, 204 P. 311.

It is next argued by the defendant that the court's nineteenth instruction misstated the law. The instruction complained of is as follows:

"You are further instructed, gentlemen of the jury, that, the cause of death not being an issue in this case, the question is, Did the defendant, Choice Pickett, act in self-defense as defined in this instruc-

tion at the time of the homicide? You are further instructed that the presumption of innocence remains with the defendant and is thrown around him for his protection up to the moment when the killing is proved or admitted. When the killing is proved or admitted it then devolves upon the defendant to show any circumstances of mitigation or excuse, or to justify it by some proof strong enough to create in the minds of the jury a reasonable doubt of the defendant's guilt of the offense charged. Unless the proof upon the part of the state shows that the defendant was justified or excused."

Counsel for the defendant admits that the instruction complained of is authorized by our statutes. Section 2719, C. O. S. 1921. The instruction complained of is in substance and language as instructions heretofore approved in homicide cases by this court. Williams v. State, 9 Okla. Cr. 206, 131 P. 179; Boswell v. State, 8 Okla. Cr. 152, 126 P. 826.

It is further contended by the defendant that the trial court erred in giving instruction 25, which is as follows:

"You are further instructed, gentlemen of the jury, that there has been permitted to be introduced certain evidence, tending to show that the deceased, Sewell, had, prior to the killing had illicit relations with the sister of the defendant. In this connection, gentlemen, you are instructed that the defendant would not be justified in killing the deceased merely because the deceased had been too intimate with his sister. It must appear at the time of the killing that the killing was necessary to prevent the immediate death or injury of the defendant, and not as a revenge for past occurrences.

"The rights given by our statutes are defensive and never aggressive. They may be exercised for prevention alone, and can never justify that which is done for revenge only, and if the defendant killed the

deceased merely as a matter of revenge, for a wrong done his sister, he would under the law be guilty of murder or manslaughter according to the circumstances attending the killing."

No authorities are cited by the defendant in support of his contention that the court erred in this instruction, but it is argued that the instruction is erroneous, as it directly refers to revenge being the moving spirit that caused the defendant to take the life of the deceased, that the court, in giving this instruction, based it upon the wrong assumption, revenge not being the motive prompting the action of the defendant when he fired the shots, but that defendant acted in his necessary self-defense, believing it was necessary at the time he fired the shot to do so to protect his life or save himself from receiving great bodily harm at the hands of the deceased.

It is further argued by the defendant that the state failed to show any motive for the killing; that the defendant made proof of threats, reputation of bad character, and incidentally some evidence of illicit relation of the deceased with a sister of the defendant. We cannot quite agree with the contention of the defendant's argument in this case, as it is clearly apparent from the record that the action of the defendant was prompted by the information which defendant had received that the deceased had been cohabitating with his young sister and that she was pregnant, and that the deceased had boasted of the fact that he had jazzed the Pickett girl, and that, when deceased was remonstrated with he made a threat as to what he would do with the Picketts if they raised any trouble with him. When such information was received by the defendant, it inflamed his mind, and he became enraged as any boy would have done who

was worthy of the name of brother. The information as to his sister's condition seems to have so weighed on his mind until he armed himself and started in search of the deceased, and when they met defendant contends deceased made a move as defendant thought to get a gun, and he shot the deceased to death. It is clearly apparent from the record that the motive prompting the defendant was his inflamed condition of mind over his sister's condition, and the report he received of the statements of the deceased as to his conduct with his sister and the threats as to what he would do if any trouble was raised with him. The conduct of the deceased with his sister was unpardonable, and should be condemned by all good citizens; yet it does not constitute a legal defense to the crime for which the defendant was convicted.

In January v. State, 16 Okla. Cr. 166, 181 P. 514, the court in its sixth paragraph of the syllabus says:

"The so-called unwritten law, 'the right to avenge wrongs done a female member of a defendant's family by killing the wrongdoer,' does not exist in this state."

We think under the testimony in this case that the instructions of the court were proper, and that they were fair to the defendant.

Finding no errors in the record prejudicial to the rights of the defendant, the judgment is affirmed.

DOYLE, P. J., and EDWARDS, J., concur.