The resolution of the police jury, or whatever it was, has been repealed.

We may go one step further, and add, if the police jury has authority to repeal the ordinance, there is no error. If it did not have that authority, its action is only brutum fulmen.

For reasons assigned, the judgment of the district court denying the injunction and dismissing plaintiffs' petition is affirmed.

---

(56 South. 655.)

No. 19,091.

STATE v. ALLEN et al.

(Nov. 27, 1911.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 13*)—STATUTORY PROVISIONS—VALIDITY.

It is not necessary for a law to denounce a crime before providing the penalty. It is sufficient for the law to provide that one doing a certain designated act shall incur a stated penalty.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 13, 14; Dec. Dig. § 13.*]

2. THREATS (§ 5*) — INDICTMENT — ELEMENTS OF OFFENSE—"FAMILY."

The averment that the accused sent a threatening letter to Mrs. Filiquier and the members of her "family," to wit, Lucile Katherine Horne, her granddaughter, and Charles L. Horne, her son-in-law, without further stating the relationship between the first-named person and the latter two, is a sufficient averment to support an indictment under Act 110 of 1908. as that act specially includes the lineal and collateral relatives to and including the third degree. (Citing 3 Words and Phrases, 2673).

[Ed. Note.—For other cases, see Threats, Dec. Dig. § 5.*]

3. STATUTES (§ 118*)—TITLES—THREATENING LETTERS—AMENDING STATUTES.

Act 63 of 1884 was intended to protect persons from being intimidated by blackmailing letters, or letters containing threats of any kind, and, under its title, it could have included the word "family," so as to protect the person from threats against his family. It nat-urally follows that, if this provision could have been inserted under the title of the original act, it can be inserted in the amending act without violating the constitutional provision that no act shall be broader than its title.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 118.*]

4. STATUTES (§ 107*)—SUBJECTS—THREATENING LETTERS.

Act 63 of 1884, amended by Act 110 of 1908, has a single object, the protection of a person against the receipt of threatening letters, and is not unconstitutional on the ground of having two objects.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 121–134; Dec. Dig. § 107.*]

5. CRIMINAL LAW (§ 1151*)—APPEAL—REVIEW—DISCRETION OF TRIAL COURT.

The trial judge is vested with some discretion to refuse a postponement because of the absence of a witness, and his ruling will not be set aside, and the case remanded, where it is not shown that he has arbitrarily used his discretion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3045–3049; Dec. Dig. § 1151.*]

6. WITNESSES (§ 2*)—COMPULSORY PROCESS—GROUNDS—DILIGENCE.

A defendant must have used due diligence to obtain the presence of a witness, before he can insist upon a compulsory process for the attendance of the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 2–4; Dec. Dig. § 2;* Criminal Law, Cent. Dig. § 1343.]

7. CRIMINAL LAW (§ 594*)—CONTINUANCE—ABSENT WITNESS—POSSIBILITY OF FUTURE ATTENDANCE.

Before a defendant can insist upon a postponement because of the absence of a witness, he must show with a reasonable degree of certainty that the witness, who is absent from the place of trial, will be within reach of the process of the court when the case is again called.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1332; Dec. Dig. § 594.*]

8. CRIMINAL LAW (§ 784*)—TRIAL—INSTRUCTIONS—CIRCUMSTANTIAL EVIDENCE.

It is not error for a judge to charge the jury: "I charge you that circumstantial evidence is legal, and you may convict upon such evidence alone; but I charge you that, to do so, the circumstances relied on for conviction must not only be consistent with defendant's guilt, but inconsistent with every other reasonable hypothesis"—and then to modify this statement by the further statement: "This rule applies only when the conviction depends entirely on circumstantial evidence, so that, if there is any direct evidence tending to connect the defendant with the commission of

the crime charged, the rule above given does not apply."

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1883–1888; Dec. Dig. § 784.*]

9. CRIMINAL LAW (§ 786*)—TRIAL—INSTRUCTIONS—STATEMENT BY ACCUSED.

Where a court charges a jury that the testimony of the accused is to be weighed by the same rules as that of other witnesses, and at the same time states that formerly accused were not permitted to testify, because of the great temptation to exculpate themselves, the latter statement is not reversible error, as it does not criticise the present law.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1787, 1895–1901; Dec. Dig. § 786.*]

10. CRIMINAL LAW (§ 1158*)—APPEAL—REVIEW—QUESTIONS OF FACT.

The question of innocence or guilt is one wholly within the province of the jury. This court can deal only with the questions of law involved, without reference to the facts which are alleged to constitute the crime.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1158.*]

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Mrs. Lou Allen and another were indicted for sending threatening letters for the purpose of extorting money. From a conviction, Mrs. Allen appeals. Affirmed.

Alexander & Wilkinson, A. J. Murff, and M. C. Elstner, for appellant. Walter Guion, Atty. Gen., and J. M. Foster, Dist. Atty. (G. A. Gondran, of counsel), for the State.

BREAUX, C. J. Two bills of information were filed in the district court of Caddo on the 12th day of May, 1911, against Mrs. Lou Allen and her husband, charging them with having sent threatening letters through the United States mail to Mrs. Filiquier, with the purpose of extorting money from her.

They were put on their trial on both charges on the second day of July following. She was found guilty, and her husband was acquitted.

From the sentence imposed, and the judgment condemning her to serve five years at hard labor in the penitentiary she appealed.

In the first place, in her defense she filed a demurrer to the informations on the grounds that they did not charge a crime under the statute.

She further urged duplicity in the informations, and asked that they be quashed for the reason that they were based on Act 110 of 1908, which is, as she averred, unconstitutional on two grounds—the first, that the title did not denote the object, and that, if it had an object, it was dual, and in violation of article 31 of the Constitution.

These grounds were overruled, and are now before us for decision.

The next point urged in her defense was that an important witness was absent when the case was called. She asked not to be forced to trial in the absence of the witness, but the district attorney opposed a continuance or postponement.

Defendant swore that this witness, J. A. Savage, was temporarily absent from the city of Shreveport, and that his presence could be had in a few days.

Learned counsel for the defendant wrote down what they expected to prove.

They, none the less, insisted upon the presence of the witness. After having excepted to the court's ruling compelling the defense to go to trial and to reduce the testimony to writing, they tendered the sworn statement to the district attorney as to what the defendant expected to prove by this witness; that is, that on the evening, as he was leaving the residence of defendant, he met a man at the front stairway, who had the appearance of being a foreigner, that this man opened the door to the stairway of defendant's home, and he heard the defendant ask the man what was wanted, and he heard the man say something about money for the benevolent or charitable purposes—"being in the yard or in the house, he could not tell which."

This admission having been made, the court proceeded with the trial.

Next in the order of the issues as presented, bills of exceptions were also taken to the charge of the trial judge, instructing the jury, in substance, that a defendant who testified in his own behalf must be judged by the same rules; that, formerly, an accused was not permitted to testify; that the temptation to exculpate himself was deemed so strong and compelling that the lawmaker would not subject him to that peril; that, owing to the change in the law, he may testify; that he exercises his option to take the stand or not, and, if he does not testify, it is made the duty of the court to instruct the jury that his silence shall in no manner be construed against him.

Before passing upon this point, we will note the narrative inserted in one of the bills of exceptions without objection. It doubtless was inserted in one of the bills in order to properly present the point of law involved.

The following is substantially the narrative:

That the state introduced letters charged to have been mailed by the defendant, and also evidence of the fact that the $500 had been deposited in accordance with the terms of the letter. That the sheriff and his deputies were on the lookout at different places near the scene of the alleged crime, and saw the defendant take the money from under a box where it had been placed, as directed in the letters. That immediately thereafter the sheriff and his deputies walked from their respective places of concealment to the home of defendant and placed her under arrest. That she at first denied having the money, and that shortly thereafter she said that she had it. She said that she did not know why it was placed where it was, that a stranger came to her house and told her of the amount, where it was, and that it

129 La.—24

had been deposited there for benevolent and charitable purposes.

It further appears by the narrative of the bill that the defendant and her husband denied having written or sent the letters, and that there was evidence to show that neither letter was in their handwriting.

That the state also introduced evidence in order to prove knowledge on the part of the defendant of the fact that she, at a time prior, referred to Chas. L. Horne as Mr. Lee, his real name being Chas. Lois Horne, and that, in one of the black hand letters, Chas. Lois Horne is referred to as Mr. Lee.

It is also stated as part of the evidence that, shortly after the first letter, signed "Black Hand," was received, the defendant, while on a visit to the home of Mrs. Filiquier, stated to Mrs. Filiquier that she had received an anonymous letter which was cause of annoyance to her; that the defendant, Mrs. Allen, and Mrs. Filiquier, to whom the black hand letter was addressed, were close friends, members of the same church, and frequented each other.

That Mrs. Allen is a woman of means and education, of good moral character for honesty, veracity, and truth, and stands well in the community.

Further, that the state in rebuttal offered testimony tending to show that no one went to the house and talked to Mrs. Allen on the evening in question.

These facts, we take it, were brought to the attention of the court in order, on the part of the defense, to obtain the following instruction to the jury, as it sets forth whether or not the evidence was exclusively circumstantial:

"I charge you that circumstantial evidence is legal, and you may convict on such evidence alone. But I charge you that, to do so, the circumstances relied on for conviction must not only be consistent with defendant's guilt, but inconsistent with every other reasonable hypothesis."

The court gave the charge, but modified it as follows:

"This rule applies only when conviction depends entirely on circumstantial evidence, so that, if there is any direct evidence tending to connect the defendant with the commission of the crime charged, the rule above given does not apply."

The counsel for the defendant objected to the modified charge.

In due time, defendant filed a motion for a new trial on the ground that the court erred in overruling her demurrer and motion to quash, and in forcing her to trial without the presence of her witness, J. A. Savage, before referred to, who was temporarily absent, and whom she tried to have present; that the ruling refusing her the right to his presence was prejudicial to her cause. She complained of the instruction of the judge to the jury regarding witnesses who testify in their own defense, for the reason that it had a tendency to discredit her testimony and to create a decided impression with the jury adverse to her defense; that she should not have been referred to as one desirous of exculpating herself to the extent directly intimated and leading to an unavoidable inference against her.

A motion in arrest of judgment was filed, reiterating that the informations stated no crime, and reiterating that the law is unconstitutional.

As forming part of the statement of the case, and in order to have the pleadings before us, we here insert a copy of the informations, which is as follows:

"Willfully, feloniously, and knowingly did send and deliver and caused to be sent and delivered through the United States mail, and caused to be received by Mrs. Mina Filiquier, a writing and letter threatening to kill, maim, wound, murder, kidnap, trouble, and molest her and members of her family, and do bodily harm to her and members of her family, with the intent to extort money, goods, chattels, promises, and obligations for the payment of money and other valuable things, from her, the said Mrs. Filiquier, and did specially threaten to kidnap, take, and molest her granddaughter, Lu-

cile Katherine Horne, and kill her son-in-law, Chas. L. Horne, and father of the said Lucile Katherine Horne; the said writing and letter being in words and figures as follows:"

Here follows the letter in question, which we do not deem necessary to insert here.

I.

[1] The learned counsel who argued the case on appeal with force urged that the act under which the defendant is prosecuted, relating to the sending of threatening letters, provided a penalty, but did not denounce the act itself which the lawmaking power had deemed proper to denounce as a crime. The contention is that the act it was the purpose of the lawmaking power to denounce should have been described, or, at any rate, referred to, with some statement as to in what it consisted, and then to follow it with the penalty to be imposed in violation of the statute.

Without entering into a lengthy discussion on this point, we will state the conclusion found—that there is sufficient precept, definition, or denunciation in the statute to save it from the attack of able and learned counsel. The act is made a crime by the terms of the penalty. That is not a new mode of legislating as relates to criminal law.

We have not found in this point any ground upon which to set aside the information.

II.

[2] The second ground for decision is that, although in one part of the informations it is charged that the written threats were addressed to Mrs. Filiquier and members of her family, it is not charged that those named in the indictment, to wit, Lucile Katherine Horne, her granddaughter, and Chas. L. Horne, her son-in-law, persons named in connection with the threat in the letters, the former particularly referred to as related to asserted kidnapping, were members of her family.

If it be conceded that the granddaughter is not a member of the family of Mrs. Filiquier, then the point is correctly taken.

But she is a member of her family according to the definition.

Those of the same blood—in the broad meaning of the term—have been taken as belonging to the same family. Words and Phrases, vol. 3, p. 2673, verbo "Family."

True, this definition is broad; perhaps, too broad. But it, none the less, certainly can be said, under our Civil Code, that a grandchild is of the same family as the grandmother. The article of our Code specially includes the grandchild under the head "Children."

Be that as it may, the statute under which the informations were drawn denounces the sending of threatening letters "to him or her" as an offense.

"Threatening to kidnap a member of her family."

The grandchild, in that view, is a member of her family.

At any rate, there was sufficient charged in the informations to admit of proof of the relation the grandmother stood toward her grandchild and the authority she had over her as one of the members of her household.

But this is not all. The following from Act 110 of 1908, p. 166, § ·1, is decisive:

"Provided that the word 'family' as used in this act shall be defined so as to include the lineal relatives; collateral relatives to and including the third degree of the members of the household."

[3] But the defendant questions the constitutionality of this act—particularly objects to the definition inserted in the act of the word "family."

The first ground of objection to this act at this point is the alleged insufficiency of the title of the act.

Of course, if the act is unconstitutional, the word "family," as defined by the act,

would have no meaning and would not be pertinent.

But to resume, and decide the objection which should have that fatal effect, according to the learned counsel for defendant, we quote:

"To amend and re-enact section 1 of Act 63 of the. General Assembly of the state of Louisiana for the year 1884, approved July 9, 1884, entitled 'An act to provide for the punishment of the offense and crime of attempting to extort money or any property or valuable thing through or by means of threats, threatening letter or communication, or by means of other unlawful acts or devices.'"

In attacking the present law, Act 110 of 1908, learned counsel found it necessary to go back to the original act of 1884, of which the foregoing is the title.

The point of attack presented by learned counsel is that, while conceding that the Legislature might have amended this act (63 of 1884) in any manner germane to the original statute, and might have added any matter which might have been included under the title of the original act, nothing could be included in the amending act (110 of 1908) which could not have been included under the title of the original act.

In answer we will state: We are of opinion that the substance of what is contained in the amending act, as cited, might have been included under the title of the original act. ·

We are of the opinion that, under the original act, the Legislature could have given a definition of "family," as was done in the amending act of 1908.

By including the word "family," the amending act designates the purpose of the title, which was to protect the family against blackmailing letters, and particularly the person who is annoyed because of threats "to him or her" as to what the intention is to do to particular members of the family. If the title of the original act was broad enough to include one person it was the intention to protect against annoying and threatening let-

ters, it was broad enough to include a person who is annoyed by the threat to kidnap a member of the family.

In other words, the purpose was to protect the one person who is harassed by the threats to kidnap a member of the family if the money asked for is not forthcoming as directed.

In this case, we considered the matter to the extent that one person was concerned. From this point of view, we think that the paragraph defining the word "famliy" in the amending act of 1908 is not illegal and that effect should be given to the definition.

[4] But the defendant, through learned counsel, presses the further ground upon our attention that the amending act has a double purpose, and violates the article of the Constitution declaring that each act shall have one object. The ground on this point is that the act had a double purpose, to wit, to prevent the sending of a letter to a person threatening to do a particular act of bodily harm; the other, to send such a letter with a threat to injure the aunt, the uncle, the niece, or the nephew of this person.

We are unable to arrive at the conclusion arrived at by learned counsel in their argument.

We will state, in the first place, that the object of the title is notice of the object of the act.

All that is necessary to effect the notice should be stated, and even details in that matter would not vitiate the act, provided it was not the intention to include another offense—to carry out another and an entirely different purpose.

In the present act, there is oneness of purpose, as we have seen. It all turns upon the desire to protect persons from annoying persecution by sending to them anonymous letters, threatening to extort money, and, if not paid, to kidnap or commit some other illegal act.

We must decline to set aside Act 63 of 1884 or the amending Act 110 of 1908 as unconstitutional on the grounds urged

The trend of thought upon the subject may, to some extent, be gathered by referring to State v. Rushing, 49 La. Ann. 1530, 22 South. 798.

The court said in that case, referring to a point very similar to the one now at issue:

"We can appreciate the objection under article 29 of the Constitution [of 1879] to the inclusion of two distinct crimes in one statute."

The court stated with special reference to a prosecution under Act 63 of 1884 (which was the only act extant on the subject at the time):

"We have no such grouping of separate offenses, but the statute dealing with the attempts to extort and merely specifying the modes of the offense are not so stated in the act as to give it the character of a dual purpose."

On this subject, the features of this act are contained in the amending act (110 of 1908).

The decisions cited by defendant refer to acts which contain two separate and distinct objects. For instance, in the case of State v. Heywood, 38 La. Ann. 689, there was not only one purpose; there were four, as there were as many as four different crimes denounced.

The Legislature, in the act, passed from the mere threat to injure to acts of arson. The court properly declared the act unconstitutional.

It is the same in other decisions cited by learned counsel for the defense.

### III.

[5] The defense, next in the order of the argument, urged that if their position, as before stated, was not maintained, then that the prosecution was illegal, because the defendant was forced to trial in the absence of J. A. Savage, a material witness.

It is stated that this witness would have corroborated the defendant, and that his cor-

roboration was material and of the greatest importance.

We, for the purpose of the argument, concede the correctness of this statement. Still we cannot find that it is sufficient ground to grant a new trial.

The defendant did not sufficiently avail herself of the provisions of law enabling her to compel his presence.

But the defendant insists that she had the right to have her witness present at the trial.

As a general proposition, the insistence is correct. But there are other considerations to be taken into account in passing upon this point.

[6] First. The appellate court must, under our jurisprudence, take cognizance of the fact that the trial judge is intrusted with discretion in the trial of the case, and that he will see to it that no witness is absent who should be present.

Second. A defendant should to a reasonable extent so act and prepare for his defense as to persuade the trial judge that everything reasonable has been done to procure the presence of the witness.

Third. That the admission made by the district attorney was not sufficient to supply the testimony that would have been given by the absent witness, had he been present.

That the defendant is prejudiced in her defense by going to trial.

But, to take up the first proposition above numbered, as relates to the witness personally: There is nothing here going to prove that he, in so far as he was personally concerned, was at fault. No subpœna was ever personally served upon him. There was no reason to infer that he was intentionally absent and that he purposely sought to avoid the process of the court.

[7] At the same time, it must be noted that it does not appear that it was possible to procure his presence, and that in case of postponement there was strong probability that he would be in court.

Now, in order to conclude in regard to this point: In all cases of importance, it should be made to appear in some way that because of some attempt or effort that the defendant had every reason to think that his witness would be present.

The judge would be derelict in the performance of his duty were he to fail in noticing that everything had been done in reason to be ready for the trial.

We are not in the least inclined to charge the court with a want of attention in this respect.

The next proposition above numbered relates to the admission of the district attorney regarding the testimony of the absent witness were he present.

The statute enabling the officer to make admissions in criminal prosecutions has been several times interpreted.

A note of warning was given in State v. Fairfax, 107 La. 624, 31 South. 1011, citing and approving State v. Boitreaux, 31 La. Ann. 188, that too much reliance must not be placed in all cases upon the statute in question authorizing the district attorney to make admissions in regard to what the witness would state if present.

None the less, the accused has no absolute right to the presence of his witness, if there has been no diligence on his part to procure his presence. He must have been sufficiently diligent to be in a position to insist that because of personal service he has the right to compulsory process.

This was expressly passed upon in the case of State v. Richard, 127 La. 414, 53 South. 669.

We are brought to the next point for decision.

We are not of the opinion that defendant was improperly ordered to trial, and forced to proceed to trial without the presence of a most important and material witness, and that there was reversible error in this respect.

All of the features of the case as presented do not create the opinion that anything required to be done was left undone on the part of the state, or that there was any arbitrariness manifested in compelling the defendant to go to trial.

The witness was not in the city of Shreveport, and it does not appear, with any degree of certainty, that he was in the parish within the process of the court.

Upon this point the thought presents itself: A motion for a new trial was ably pressed and thoroughly argued. On the hearing of that motion no attempt was made to procure the presence of Savage, the witness, or to procure his affidavit corroborating the affidavit of the defendant.

If one or the other had been produced, the court, doubtless, would have been impressed by it.

It may be said in answer that the defendant was entitled to the presence of the witness before the jury. That is very true, if she was legally entitled to his presence at all.

It remains that it might have been brought up again before the trial judge in the application for a new trial.

[8] As to the instruction which modified the charge requested by the defendant:

The purpose of the statement of facts in one of the bills of exceptions, as before stated, was to show that the state relied entirely on circumstantial evidence.

The district attorney's contention was that the evidence was not all circumstantial; that there was some of it direct.

The trial judge instructed the jury, as before stated, in accordance with the defendant's request, but qualified the charge by adding, substantially, that the jury would determine whether it was circumstantial or direct.

The charge was given so as to cover the whole law on the point.

As given, we have not found that it was objectionable.

### The Defendant's Testimony.

[9] The accused having testified on her own behalf, an objection was urged to that part of the charge giving the history of the law relative to witnesses interested in the cause.

The charge refers "to the rules," and right afterward "same rules."

We infer that the whole charge mentioned that both the witnesses parties to the suit and those not parties to the suit were subject to the same rules.

Immediately afterward, the jury were told that the law upon the subject had been changed. Formerly the witness was not permitted to testify in his own behalf. The temptation to exculpate himself was deemed so compelling that the lawmaker would not subject him to that peril.

We can only say at this time that we have no sympathy whatever with the idea that there should be discrimination made between witnesses interested and those not interested who appear on their own behalf. The principle of the law is that all witnesses are subject to the same rules.

A defendant's testimony should be weighed as any other testimony. He is innocent until he is found guilty. His testimony should be fairly and impartially considered.

The jury having been told that the defendant was to be judged by the same rules, the historical account which followed has not destroyed the effect of the first part of the instruction.

Reference as to the law formerly upon the subject might have been left out. At the same time, as there is no direct criticism of the present law, we find no good reason to disturb the verdict on account of an historical reference.

[10] We will say, in conclusion, that we have given this case on all questions of law involved our most careful attention. We

have nothing to do with purely questions of fact relating to guilt or innocence. This was within the province of the jury.

The learned trial judge stood between the state and the accused and sought throughout to rule according to law.

We have not found that in his rulings he has committed error which would justify us in setting aside the verdict.

There is only one alternative left us. It is to affirm the judgment.

For reasons stated, the law and the evidence being in favor of the state and against the defendant, it is ordered, adjudged, and decreed that the verdict, sentence, and judgment are affirmed.