# F. E. BRISTOW v. STATE.

No. A.-10800.   Feb. 4, 1948.

(189 P. 2d 629.)

E. Moore, of Coalgate, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, F. E. Bristow, was tried and convicted in the county court of Coal county on a purported charge of driving an automobile on a public highway while under the influence of intoxicating liquor, and was assessed a fine of $100.

The defendant is entitled to be sustained on two of the propositions presented by the appeal. The demurrer to the information should have been sustained, and the evidence is insufficient to support the conviction.

In the caption to the information, it alleged that the defendant committed the offense of "Driving an automobile while under the influence of intoxicating liquor", but in the charging part of the information it is alleged:

"That F. E. Bristow in the County and State aforesaid, on the day and year aforesaid, did wilfully, wrongfully, knowingly and unlawfully, drive a certain automobile, a 1929 Dodge Sedan, 46 Oklahoma, 65-572, on Highway No. 31, (State Highway No. 31), northeast of the city of Coalgate, Oklahoma, and south of the Caney Bridge on said Highway, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the State."

In the case of Allen v. State, 63 Okla. Cr. 16, 72 P. 2d 516, 519, this court stated:

"An information is divided into four parts: (1) The caption; (2) the commencement; (3) the charge; and (4) the conclusion. The substantial part of the information is the charging part.

"No information is insufficient by reason of a defect or imperfection in the matter of form, which does not tend to the prejudice of the substantial rights of the defendant on the merits. Section 2892 (22 Okla. St. Ann. § 410).

"The statute dispenses with mere formality and technicality, but the requirement that the information must be direct and certain as it regards the party charged, the offense charged, and the particular circumstances of the offense charged, is imperative. Section 2884 (22 Okla. St. Ann. § 402)."

In Bruning v. State, 63 Okla. Cr. 1, 72 P. 2d 393, this court held, first syllabus:

"The introductory paragraph of an information is ordinarily equivalent to a mere descriptive label, and a wrong name given to the crime in that part of an information is an irregularity only, and not fatal. The charging part of the information must be looked to, to determine the character of the offense."

In the body of the opinion in said case it is stated:

"It appears that the name given to the crime charged in the information is forgery in the first degree, but by the charging part the defendants are charged with forgery in the second degree.

"A mistake in this particular is an irregularity and is not fatal. The introductory paragraph of an information is ordinarily equivalent to a mere descriptive label. Vickers v. U. S., 1 Okla. Cr. 452, 459, 98 P. 467.

"A wrong name given to a crime in the preliminary part of an information is an irregularity only, and is not fatal. The charging part of the information must be looked to, to determine the character of the offense. Kelly v. State, 12 Okla. Cr. 208, 153 P. 1094."

See, also, Ex parte Conway, 84 Okla. Cr. 118, 179 P. 2d 699.

It would seem when measured in the light of the above authorities that the failure of the information to charge that the defendant was under the influence of intoxicating liquor at the time he drove his automobile on the highway, renders it fatally defective and the demurrer should have been sustained.

However, the principal contention of the defendant is that the evidence is insufficient to sustain the conviction. Only two witnesses testified for the State and no evidence was offered on behalf of defendant. These two witnesses were highway patrolmen who did not see the automobile of defendant until after it had overturned on the side of the road. Their testimony was short. Since their testimony was substantially identical, we shall quote only from the first witness which was called. After testifying that he arrested defendant on June 7, 1946, the patrolman testified:

"Q. Tell the court and the jury just what you saw and what you did on that occasion? A. I was here in the county jail down here working on an accident, and they told us there was another accident out toward Cottonwood, so we rushed to town, and when we got there, there was a car turned over on the highway this side of the bridge, and we had information it belonged to Mr. Bristow; and some 30 minutes later we found him at Paris's house. Q. Was he at the car when you found him? A. He was not. Q. What was his condition, as to being drunk or sober, when you discovered him? A. He was drunk. Q. You did not see him drive the car? A. I did not. He said he had driven it, so did Paris. Q. They made the statement that Frank Bristow was driving the car when it turned over? A. That is correct. That is all."

There was no testimony by any witness who saw the defendant immediately before the accident to describe his condition or to state what his actions were immediately before or after the accident occurred. The highway patrolmen testified that they saw the defendant at the home of one Paris about 30 minutes after they had examined the car which turned over on the highway. There was no proof as to what time had elapsed from the time the defendant had overturned his automobile until the pa-

trolmen arrived at the scene. There are just too many leaks in the proof of the state and too much evidence is dependent upon surmise, speculation and suspicion. It may be true that the defendant was operating his automobile while in a drunken condition, but the closest the state came to proving it was a statement by the patrolmen that he was drunk when they found him which was about 30 minutes after they had investigated the accident without any showing at all as to how long it had been since the car allegedly driven by defendant had left the road.

Because of the insufficiency of the evidence to sustain the conviction, the judgment of the county court of Coal county is reversed and the defendant is discharged.