## NASH v. STATE.

No. A-11350. June 20, 1951.

(233 P. 2d 322.)

Earl Boyd Pierce, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. Plaintiff in error Augusta Nash, defendant below, was charged by information in the county court of Muskogee county, Oklahoma, with the offense of unlawful possession of intoxicating liquor, the quantity of liquor allegedly in the defendant's possession being 10 fifths, 24 pints and 32 half pints of tax paid whisky. The defendant was tried by a jury, convicted and his punishment fixed at a fine of $50 and 30 days in jail; judgment and sentence was accordingly entered.

The defendant makes three contentions of error, but it will be necessary to consider only one, that is, the evidence is insufficient to sustain the verdict and judgment and sentence. In this connection it appears that on July 23, 1949, members of the sheriff's force, R. T. Sypert, Rennie Rector, J. Crossland and Mr. W. T. Thorne, the latter being from the State Bureau of Identification, operating under a search warrant issued out of the justice of the peace court of Elmer Coon, searched the 2-story building located at 226 and 226½ 2nd Street, Muskogee, Oklahoma. This building was owned by Jack Treadway. The raid was conducted some time in the evening before dark. The downstairs of the building at 226 was divided into a cafe and shine parlor, the cafe being operated as a separate business from the shine parlor and the upstairs which was divided into rooms running from No. 1 to No. 12 inclusive. The rooms upstairs were apartments and occupied by several families or people. The upstairs and shine parlor were owned and operated by Jack Treadway. It appears that the defendant Augusta Nash was running the shine parlor for Treadway. He being the only person in charge of the shine parlor the search warrant was served on Nash. The officers searched the shine parlor downstairs but found no whisky. The search continued and whisky was found in Room No. 3 upstairs. But before the whisky was found in Room No. 3 the officers had searched other apartments than Room No. 3. The officers were asked the following questions and gave the following answers:

"Q. Well, you must have concluded that the defendant was the one that owned the whiskey? A. Yes, we did. Q. And you did that in spite of the fact that he was running the shoe shine parlor downstairs? A. Well, I knew of other things he did besides that."

The officers admitted they found Nash in the shine parlor operating the same at the time they arrived to serve the search warrant. Moreover, they admitted that none of the whisky was found in the shine parlor. Notwithstanding this fact, after the search and seizure of the liquor in Room No. 3 upstairs, they took Nash into custody. There was no other evidence to connect the defendant Nash with the whisky other than he was running the shine parlor for Jack Treadway at the time the liquor was discovered in the upstairs apartments which were operated by Jack Treadway. After the raid the officers did not tag any of the whisky as belonging to Augusta Nash. The affidavit and search warrant were introduced in evidence by the defendant. It is pertinent to note in this connection that nowhere in the search warrant does the name of Nash appear. The search warrant does mention Jack Treadway and John Doe. It describes Rooms 1 to 11, inclusive. It is also pertinent to observe that the return to the search warrant is contradictory. It recites "the property was found in possession of Augusta Nash" and then states "I found no person in possession thereof". It then relates that notice was posted on the room where the liquor was found. Hence it appears the officers were not certain as to the defendant's connection with the liquor. The record does not connect Augusta Nash with room No. 3 as being the room occupied by him. There is no attempt whatsoever made, any place in the record, to connect him with room No. 3. The burden was on the state to connect the defendant with room No. 3, it was not on him to prove his lack of connection. On the motion to suppress

the evidence obtained in the search and seizure it appears that rooms 11 and 12 were rooms that defendant Augusta Nash had access to. In this connection it appears that access to rooms 11 and 12 was obtained by means of the back stairway, admittance into said rooms could in no way be obtained directly from the other 10 rooms or apartments upstairs, they were separated by a solid partition. It is clear that the evidence herein connecting Augusta Nash with the possession of this liquor is entirely circumstantial. The only circumstance tending to connect the defendant with the possession of the liquor was his job in the shine parlor and possession of some of the keys to the rooms upstairs. The record discloses that room No. 3 was unlocked, and that it does not affirmatively appear that Augusta Nash had a key to room No. 3. There is no affirmative evidence establishing to whom room No. 3 belonged. There were several other persons living upstairs. The record in chief does not disclose any positive facts connecting the defendant with the possession of this whisky in room No. 3. It can just as readily be concluded that the whisky was in possession of Treadway, without the defendant Nash's knowledge, or in the possession of some of the other tenants in the upstairs apartments. Only the officer's conclusions hereinbefore set forth tends to connect the defendant with the possession of the whisky. The first observation of the officer is a mere conclusion without a sufficient predicate, and the second a pure statement or innuendo designed to create a desired reflection without constituting fact. The evidence herein is entirely insufficient to identify the defendant with the crime committed. Moreover, the circumstances herein presented are highly speculative as to whether the defendant had any connection with the possession herein involved or whether it was some one else.

In Bristow v. State, 86 Okla. Cr. 97, 189 P. 2d 629, in syllabus 4 it is said:

"Where the e idence of the state to sustain a conviction is based upon surmise, speculation and suspicion, the conviction will be reversed as not sustained by sufficient evidence."

In Stump v. State, 66 Okla. Cr. 391, '398, 92 P. 2d 616, 620, this court said:

"No man ought to be convicted of a crime upon mere suspicion, or because he may have had an opportunity to commit it or even because of bad character, and where circumstances are relied on for a conviction, they ought to be of such a character as to negative every reasonable hypothesis except that of the defendant's guilt.

"When we recall the presumption that the law always indulges as to the innocence of the defendant, and the necessity of establishing his guilt beyond a reasonable doubt, we think it would have been a proper exercise of the power vested in the trial court to have advised the acquittal of the defendant on the ground that the evidence was insufficient to warrant a conviction."

The proof herein does not rise to that degree required of circumstantial evidence, as to exclude every reasonable hypothesis except that of the defendant's guilt. This court will not permit the defendant to be punished on suspicion of guilt alone. For the reasons hereinbefore set forth the cause is accordingly reversed and remanded, with directions that if the state has no other evidence against the defendant to support the charge the same should be dismissed.

JONES and POWELL, JJ., concur.