Bernard Phillip MILLER, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12109.

Criminal Court of Appeals of Oklahoma.

March 16, 1955.

Stuart H. Russell, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., Granville Scanland, County Atty., Nathan Sherman, Asst. County Atty., Oklahoma City, for defendant in error.

JONES, Presiding Judge.

This is an appeal by Bernard Phillip Miller from a sentence of 15 years imprisonment in the penitentiary imposed after a plea of guilty to an indictment filed in the District Court of Oklahoma County which charged the offense according to the caption of the indictment of "furnishing narcotics to a female person under the age of 21 years."

Several assignments of error are presented in the brief of the defendant. After careful consideration of each of them, we have come to the conclusion that only two of them are of sufficient merit to require extended discussion.

These two propositions are as follows:

1. The indictment was insufficient to charge an offense under the laws of the State of Oklahoma.

2. The indictment was insufficient to confer jurisdiction on the trial court to sentence the accused to 15 years imprisonment in the penitentiary.

These assignments of error will be considered together and involve a consideration of the Uniform Narcotic Drug Act of 1935 with the 1953 amendment to said act. 63 O.S.1951 §§ 401–424, 63 O.S.Supp. §§ 401, 401.1, 420.

Skipping the formal preliminaries, the indictment against the accused reads:

"Bernard Phillip Miller whose more full and correct name is to your Grand Jury unknown, then and there being,

did then and there willfully, unlaw-fully and feloniously commit the crime of furnishing narcotics to a female person under the age of 21 years in the manner and form as follows, to-wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there willfully, unlawfully and feloniously prescribe, administer, furnish, give and deliver a certain narcotic drug, to-wit: morphine sulphate to Lou Ann Johnson, a female person 4 years of age and under the age of 21 years;

contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

Before the 1953 amendment to the Uniform Narcotic Drug Act the only statute creating and defining an offense was Tit. 63 O.S.1951 § 402 which provides:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this Act."

Nowhere in the Uniform Narcotic Drug Act is there any definitive statute which makes it a crime to furnish, give or deliver narcotic drugs unless the amendment to the penal section of the statute which was adopted in 1953 had the effect of making such acts offenses which had not theretofore been classified as criminal. Subsection (b) of the penal section of the statute after the amendment in 1953 reads:

"Whoever violates any provision of this Act, if such violation consists in unlawfully selling, furnishing, giving, delivering or exchanging any narcotic drug, contrary to the provisions of this Act, to a person, male or female, who is under twenty-one (21) years of age, shall be punished by imprisonment in the penitentiary for not more than twenty (20) years; and, upon a second, or subsequent conviction, such offender shall be punished by imprisonment in the penitentiary for any term of years, not less than five (5) years, and up to and including imprisonment for life." Tit. 63 O.S.1953 Supp. § 420(b).

The basic principle argued by the accused in support of his two assignments of error is that the amendment to the penal section of the statute did not have the effect of creating and defining an offense; that the only acts forbidden are those set forth in 63 O.S.1951 § 402, supra, and none of the forbidden acts apply to the furnishing, giving or delivering of narcotic drugs to any person.

■ Although the caption placed on the indictment by the county attorney describes the crime as "furnishing narcotics," it is established law that the caption to the indictment does not control in determining the nature of the offense allegedly charged but the words stated in the body of the indictment must be considered in the light in which they are used to determine whether they charge an offense. Shiever v. State, 92 Okl.Cr. 239, 222 P.2d 530; Wilson v. State, 89 Okl.Cr. 421, 209 P.2d 512, 212 P.2d 144; Bristow v. State, 86 Okl.Cr. 97, 189 P.2d 629; Hulsey v. State, 86 Okl.Cr. 273, 192 P.2d 301. In Shiever v. State, supra [92 Okl.Cr. 239, 222 P.2d 531], it is held:

"The introductory paragraph of an information is ordinarily equivalent to a mere descriptive label, and a wrong name given to the crime in that part of an information is an irregularity only and not fatal. The character of the offense must be determined by a consideration of the language contained in the charging part of the information."

■ The indictment uses five descriptive words, to wit: "prescribe, administer, furnish, give and deliver." Two of these words, "prescribe" and "administer" are set forth in the definitive section of the Uniform Narcotic Drug Act hereinabove quoted. Assuming that the 1953 amendment did not have the effect of creating new acts which would constitute a violation of the Uniform Narcotic Drug Act as argued by defendant, yet the use of

the words "prescribe" and "administer" in the indictment were sufficient to allege the commission of a crime under the terms of the original statute, 63 O.S.1951 § 402, supra, and when the accused entered his plea of guilty to the indictment, assuming the additional penalty fixed by the 1953 amendment was not applicable to him, still he was subject to whatever penalty the court in its discretion might assess subject to the limitations contained in the statutes for prescribing or administering narcotic drugs to a person 4 years of age. Under the penal section of the statute, for the first offense of prescribing or administering narcotic drugs contrary to the provisions of the Uniform Narcotic Drug Act, the punishment that may be imposed is a fine of not more than $1,000 or imprisonment for not more than 5 years or by both such fine and imprisonment. Tit. 63 O.S.1951 § 420(a). Under any consideration of the matter the indictment was sufficient to allege an offense within the jurisdiction of the district court.

We next consider the effect which the amendment of 1953 had on the Uniform Narcotic Drug Act. This amendment hereinabove quoted added a paragraph to the penal section of the Uniform Narcotic Drug Act but it is contended that the amendment to the penal section of the Act without amending the definitive section of the Act did not have the effect of creating a new crime.

Neither counsel for the accused nor the Attorney General have cited any cases in point with the contention presented by the accused and we are convinced that the question raised is one of first impression in this state. However, our research has disclosed that there is no lack of authority on the question presented.

In 22 C.J.S., Criminal Law, § 24, p. 77, it is stated:

"The doctrine is well settled that, where the statute either makes an act unlawful or imposes a punishment for its commission, this is sufficient to make the act a crime without any express declaration to that effect."

In the case of State v. Peterson, 81 Utah 340, 17 P.2d 925, 926, the Supreme Court of Utah was dealing with an amendment to the penal section of a statute increasing the punishment for the infamous crime against nature. It was therein stated:

"In the case of State v. Johnson, 44 Utah 18, 137 P. 632, decided in 1913, this court held that under the law as it was prior to the amendment of 1923 the infamous crime against nature was accomplished only by copulation in anum and did not include copulation by one male person in the mouth of another. It is urged on behalf of the defendant that the so-called amendment of 1923 merely fixed the penalty that shall be imposed upon one who is convicted of the infamous crime against nature and that it did not change the nature of the acts which constitute such crime. One of appellant's contentions, as we gather from his brief and the oral argument of his counsel, *is that a statute which merely imposes a punishment for the commission of an act is not sufficient to make such act a crime.* Defendant's contention in such respect is not supported by the adjudicated cases. *The doctrine is well established that where a statute imposes a punishment for the commission of an act such provision is sufficient to make the act a crime without any express provision declaring it to be a crime.* U. S. v. Joyce [3 Cir.], 138 F. 455; Dyer v. Placer County, 90 Cal. 276, 27 P. 197; Gray v. State, 6 Ga.App. 428, 65 S.E. 191; Hedderich v. State, 101 Ind. 564, 1 N.E. 47, 51 Am. Rep. 768; State v. Allen, 129 La. 733, 56 So. 655, Ann.Cas.1913B, 454; People v. Brown, 16 Wend. (N.Y.) 561; State v. Pierce, 123 N.C. 745, 31 S.E. 847; State v. Ostwalt, 118 N.C. 1208, 24 S.E. 660, 32 L.R.A. 396; State v. Central Lumber Co., 24 S.D. 136, 123 N.W. 504, 42 L.R.A.(N.S.) 804." (Italics supplied.)

In State v. Douglas, 122 Wash. 387, 210 P. 778, 779, the Supreme Court of Washington was considering an amendment to the penal section of their law prohibiting the manufacture of intoxicating liquor and the court held that the amendment of the penal section of the Laws of 1915 by the Laws of

1921 sufficiently created and defined an offense though the act described as punishable was not specifically declared a crime. In the opinion it was stated:

"Some contention is made that the amendatory act of 1921 above quoted from 'neither defines nor creates any crime, but it simply prescribes punishment.' We cannot agree that such is the legal effect of that act. The above-quoted language plainly prescribes a punishment for the commission of plainly specified acts. We think it is elementary that the failure to call the specified acts a crime, or in terms declare them to be unlawful, does not in the least militate against such acts being in law criminal, when they are thus clearly defined and punishment for the commission of them is thus plainly prescribed. 16 C.J. 68; 25 R.C.L. 979."

In Hedderich v. State, 101 Ind. 564, 1 N.E. 47, it was held:

"The providing by statute of a penalty for the perpetration of an act is in itself sufficient, without other words, to render such act unlawful."

In People v. Kennedy, 21 Cal.App.2d 185, 69 P.2d 224, 229, the court stated:

"When the statute makes an act unlawful or imposes a punishment for its commission, this is sufficient to constitute the act a crime without any express declaration to that effect."

Upon our first consideration of this case we were deeply impressed with the merit of the argument of the accused that the Legislature did not by its amendment of 1953 create and define a new offense and since the penalty for prescribing or administering narcotics in violation of the Act carried a maximum penalty of only 5 years in the penitentiary, the trial court exceeded its jurisdiction in fixing the punishment at 15 years imprisonment. The acts which were punishable as criminal offenses under the original Uniform Narcotic Drug Act, Tit. 63 O.S.1951 § 402, were:

1. "To manufacture"
2. "Possess"
3. "Have under his control"
4. "Sell"
5. "Prescribe"
6. "Administer"
7. "Dispense"
8. "Compound any narcotic drug"

except as authorized in the Act.

After the amendment in 1953 the following additional acts were punishable:

1. "Furnish"
2. "Give"
3. "Deliver"
4. "Exchange"

to any person under 21 years of age.

There is still no provision of the Uniform Narcotic Drug Act prohibiting the furnishing, giving, exchanging or delivering narcotic drugs to a person over the age of 21 years, as "furnish, give, exchange and deliver" are not synonymous with the words "prescribe" and "administer" as used in the statute. "Prescribe" and "administer" as used in the statute refer to the acts of physicians, dentists, veterinarians, nurses and interns, Tit. 63 O.S.1951 §§ 407, 408, and the words "prescribe" and "administer" as shown by their usage in the above sections of the Act express the legislative intent pertaining to those two words and as therein used they are not synonymous with "furnish, give, exchange or deliver."

According to Webster's New International Dictionary the word "administer" means "to apply, as medicine or a remedy." In Black's Law Dictionary, Third Edition, it is stated:

"In physiology, and in criminal law, to administer means to cause or procure a person to take some drug or other substance into his or her system; to direct and cause a medicine, poison, or drug to be taken into the system."

Webster's New International Dictionary says "prescribe" means "to designate or order the use of, as a remedy," while Black's Law Dictionary, Third Edition, states: "In a medicinal sense prescribe means to direct, designate, or order use of a remedy."

The legislative intent to stop the traffic in narcotic drugs to persons under 21 years of age is clearly stated. The title to House

Bill No. 538 which was the amendatory act of 1953 provides:

"An Act amending Sections 420 and 452 of Title 63, Oklahoma Statutes, 1951; providing special penalties for unlawfully selling, furnishing, giving, delivering or exchanging narcotic drugs or marihuana to persons, male or female, under twenty-one (21) years of age; and declaring an emergency."

■ The object in construing statutes is to ascertain legislative intent. If the language be clear, it is conclusive. When the language of an act is dubious, the court in construing it will consider the intent of the law. Sledge v. State, 40 Okl.Cr. 421, 269 P. 385. The legislative intent in the adoption of the 1953 amendment is clearly shown both in the title to the bill and in the phraseology of the amendment. After the adoption of the 1953 amendment any interested person could clearly ascertain that the selling, giving, furnishing or delivering of narcotic drugs to a person under the age of 21 years was subject to severe penalties. It is our duty under such situation to so interpret the law as to sustain the legislative intent.

We have carefully considered the questions presented in the brief of the accused pertaining to the alleged error in overruling the motion to quash the indictment because the grand jury was not drawn and empaneled according to law and also the alleged error in accepting the plea of guilty without first making a judicial determination of the sanity of accused, and we do not feel that either of them could be sustained.

■ It is established law that the statutes governing the selecting, summoning and empaneling grand juries are directory and not mandatory, and a substantial compliance with the statutes is all that is necessary. Taylor v. State, 95 Okl.Cr. 98, 240 P.2d 803. In Houston v. State, 63 Okl.Cr. 49, 72 P.2d 526, at page 528, this court said:

" ' * * * to entitle a defendant to successfully challenge a panel of jurors, the burden is upon the defendant to show that the illegality or wrong which is the basis of such challenge is such as to have caused the defendant to suffer material prejudice.' "

As to the matter pertaining to the question of defendant's sanity, it is shown that the accused stood charged in two cases in the District Court of Oklahoma County, Nos. 22,146 and 22,147. On November 13, 1953, upon motion of counsel for the defendant, the District Court of Oklahoma County ordered the sheriff to transport the accused to the Central State Hospital for examination and observation as to his sanity. On December 11, 1953, the superintendent of the hospital made a finding that the defendant was sane and he was discharged from the hospital. On January 13, 1954, case No. 22,147, which charged the accused with taking indecent liberties with a female child, came on for hearing. Counsel for the accused offered to waive the question of the sanity of Miller but the court empaneled a jury which tried the question of his present sanity and found the accused was sane. Thereafter he was found guilty by the jury and pursuant to the verdict of the jury was sentenced to serve 5 years imprisonment in the penitentiary which sentence was directed to run concurrently with the 15 year sentence pronounced by the court in the instant case No. 22,146.

■ No question as to the sanity of the accused was ever presented in the instant case other than the motion which was filed asking that he be committed to the mental hospital for observation. The finding of the doctors at the mental hospital that the accused was sane and the verdict of the jury in case No. 22,147 finding that he was sane evidently fully satisfied the court, the accused and counsel for the accused that there was no question at all but that he was a sane man. As can be seen from this recital of the facts in connection with the two cases which were closely associated, this assignment of error is obviously without merit.

■■ The defendant entered a plea of guilty in the instant case which amounted to a confession that he had committed the acts charged against him. We can find nothing in the record in mitigation of the offense. Accordingly, the judgment and sentence of the District Court of Oklahoma County is affirmed.

BRETT and POWELL, JJ., concur.