462 So.2d 1280 (1985)
STATE of Louisiana
v.
Robert BUTLER.
No. 84-KA-173.
Court of Appeal of Louisiana, Fifth Circuit.
January 14, 1985.
*1281 John H. Craft, Staff Appellate Counsel, 24th Judicial Dist., Indigent Defender Bd., Gretna, for Robert Butler defendant-appellant.
William C. Credo, III, Asst. Dist. Atty., Research & Appeals, Gretna, for State of Louisiana, plaintiff-appellee.
Before BOUTALL, KLIEBERT and BOWES, JJ.
BOUTALL, Judge.
Appellant Robert Butler was indicted for the first degree murder of David Cruz. Following trial, a jury returned a verdict of guilty as charged and recommended a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Butler appeals both his conviction and sentence.
These six assignments of error are raised for our review:
1. The court erred in excusing for cause those potential jurors who expressed an unwillingness to the imposition of the death penalty.
5. The court erred in denying defendant's motion to quash the indictment.
10. The evidence presented by the State was not sufficient to justify a verdict of guilty of first degree murder.
8. The Court erred in overruling the defense's objection to the court's proposed charge to the jury as to the proper standard for consideration of circumstantial evidence.
9. The court erred in denying defendant's motion for a charge to the jury relative to the law of self-defense.
12. The trial court erred in denying defendant's motion to suppress the evidence.

FACTS
Deborah Revere was tending the main bar at the Four Palms Lounge in the early morning hours of May 29, 1982. Around 4:00 a.m., when things slowed down, Revere left her station to have a drink with the other bar maid and a customer. Upon returning to her station, she was confronted by a man, later identified as the defendant, who was yelling and cursing at her. The defendant told Revere he was a Jefferson Parish policeman and he threatened to "bust" her and close the place down for drinking while on duty. Revere refused to serve Butler because of his abusive language, and asked Jim Price, a customer in *1282 the bar, to tell the owner about the situation. Before Price could do this, the defendant started yelling at Price again threatening to close down the bar. Mitchell Beard, the owner of the lounge, noticed this and walked over to try to calm the defendant down, and in response to the defendant's threats, told him "Well whatever you got to do, do it."
Revere and the rest of the group watched as the defendant left the bar in a hurry, in an agitated state. Beard, Price, and Sal Soleto, a member of the band playing at the lounge that evening, walked outside the front door to see what Butler would do. They saw Butler go to his car, open the trunk and remove a gun and holster from it, then get into his car and begin to back up. Beard and Soleto noticed the license number of Butler's car, illuminated by the backup and tail lights.
David Cruz, unaware of what was taking place, exited the bar about fifteen seconds behind Butler, intending to get in his car and drive home. Meanwhile Butler pulled forward in his car, passed where he had been parked and said something to Cruz, who took a few steps toward Butler's car. Beard, Price, and Soleto heard a gun go off. Cruz turned toward the three men and said, "He shot me."[1] Soleto testified that Cruz did not have anything in his hands before or during the shooting.
At this point, Beard ran to his car and got his gun, as did Jim Price who was inside the lounge during this time. The defendant then pulled out of the parking lot firing three more shots. One of these shots hit Fred Jeffries, an employee of the lounge, in his leg. Beard fired one shot after the fleeing defendant; Price fired five shots into the air in the direction of defendant's car.
An ambulance and police unit were called and arrived shortly thereafter. Cruz and Jeffries were taken to East Jefferson Hospital. Cruz was pronounced dead shortly after arrival; Jeffries was treated and released.
Police were given a description of Butler, Butler's car, and his license number. They ran the license number of the car and determined it was registered to Butler. A unit was dispatched to Butler's address as given on that vehicle registration. The police discovered Butler's car parked across the street from the duplex where Butler lived. The officers knocked on Butler's door and when Butler opened it, arrested him without a struggle. Butler was taken back to the crime scene for possible identification. Despite the fact that Butler had apparently shaved his mustache in the interim between the shooting and his arrest, he was identified by Price, Beard, Soleto, and Revere as the man involved in the disturbance at the Four Palms.

ASSIGNMENTS OF ERROR NOS. 1 AND 5
Defendant moved to quash the indictment on the ground that exclusion of jurors because of refusal to impose the death penalty deprived him of an impartial jury. Butler now argues the use of a voir dire in accordance with the principles of Witherspoon v. Illinois, infra, and C.Cr.P. Art. 798(2) creates a guilt-prone jury or, put another way, that it results in the denial of his right to a jury unbiased on the issue of guilt or innocence.
Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) held that where a jury is chosen by excluding jurors for cause because they voice general objections to the death penalty or express conscientious or religious scruples against its infliction, a death sentence recommended by them cannot be constitutionally carried out. Rather, the exclusion of jurors for cause is only proper under Witherspoon where the jurors make it unmistakeably *1283 clear that they would automatically vote against the death penalty regardless of the evidence, or that their attitudes toward the death penalty would prevent them from rendering an impartial decision as to the defendant's guilt.
Our Supreme Court has consistently followed the principles of Witherspoon and permits the use of such a voir dire, which is codified in La.C.Cr.P. art. 798(2). See State v. Webb, 419 So.2d 436 (La.1982) and State v. Mattheson, 407 So.2d 1150 (La. 1981) both upholding a similar voir dire; and State v. Monroe, 397 So.2d 1258 (La. 1981) and State v. Kelly, 375 So.2d 1344 (La.1979) both upholding the constitutionality of art. 798(2).
More importantly, the court has held that a defendant who does not receive the death penalty has no valid complaint. State v. Edwards, 406 So.2d 1331 (La. 1981), State v. Whitt, 404 So.2d 254 (La. 1981), and State v. George, 371 So.2d 762 (La.1979). We find this line of cases dispositive of the instant one. In those three cases, the defendant could have received the death penalty but instead received life imprisonment. This is exactly what happened to Butler: Upon his conviction of first degree murder, he was eligible for the death penalty but was instead sentenced to life imprisonment. Thus, because he received a life sentence, he cannot complain of the impartiality of the jury as to imposition of sentence.
Nevertheless, Witherspoon was decided on a very narrow issue and did not exclude the possibility of a guilt-prone jury. In this regard defendant has referred us to the case of Grigsby v. Mabry, 569 F.Supp. 1273 (E.D.Ark.1983). There, following an evidentiary hearing on the use of a Witherspoon voir dire the District Court for the Eastern District of Arkansas concluded "... [A Witherspoon] jur[y] cannot be considered fair and impartial with respect to the issue of the guilt-innocence of defendants in capital cases." Grigsby, supra, at 1321. The evidence introduced at this hearing by the petitioners consisted of 270 exhibits, including social scientific research on death qualification, articles on jury decision making, and graphic displays of the results of the social science research all of which supported their contentions. Unlike the defendant in Grigsby, however, the defendant herein failed to introduce evidence on this point pretrial or during his trial, and on appeal he merely relies upon Grigsby in support of his argument. We are not persuaded by the Grigsby decision and instead prefer to follow the established jurisprudence in Louisiana on the issue. Accordingly, these assignments lack merit.

ASSIGNMENT NO. 10
Appellant argues that the evidence is insufficient to justify the verdict. On review of the sufficiency of the evidence to support a criminal conviction, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Butler was convicted of first degree murder which is defined in La.R.S. 14:30(3) as the killing of human being when the offender has the specific intent to kill or inflict great bodily harm upon more than one person. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Although intent is a question of fact, it need not be proved as a fact, it may be inferred from the circumstances of the transaction. La.R.S. 15:445.
It is undisputed that the first element of the crime, the killing of a human being, was proved. The issue is whether the State proved the defendant specifically intended to kill or inflict great bodily harm upon more than one person.
The evidence shows that the defendant, angry because he was refused service, exited the Four Palms Lounge, went to his car and got his gun out of his trunk. He then got into his car, backed up, then pulled forward close to David Cruz who was about to get into his car. The defendant *1284 said something to Cruz, then shot him. Butler pulled out of the parking lot, firing three more times in the direction of the people standing at the entrance to the lounge, hitting one person in the leg.
Viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have determined that the defendant had the specific intent to kill or inflict great bodily harm upon more than one person. Thus, the evidence supports the verdict.
Appellant also argues that at best, the evidence only supports a verdict of manslaughter. We disagree. The jury obviously felt a reasonable man would not have been so provoked when a bartender refused to sell him a beer that he would lose his self-control, go to his car, get his gun, and begin shooting at people. It must be remembered that the victim, David Cruz, had no part in the argument which occurred immediately before the shooting, when the defendant threatened to close the bar down because the bar maid had been drinking. Cruz was a complete stranger to the defendant. Moreover, evidence is uncontradicted that Cruz in no way provoked the defendant. Accordingly, the assignment lacks merit.

ASSIGNMENTS NOS. 8 AND 9
Butler contends the trial judge erred in its charge to the jury concerning circumstantial evidence, and that the trial judge erred in refusing to charge the jury on the law of self-defense. Prior to giving his instructions to the jury, the trial judge, out of the presence of the jury, asked counsel for each party if there were any objections to the charges as drafted. Defense counsel objected to the court's charge on the law of circumstantial evidence and to the lack of a charge as to self-defense. The court overruled the defense in both instances, and defendant assigns this as error.

a. Circumstantial Evidence Jury Charge

The charge concerning circumstantial evidence defense counsel objected to was read to the jury as follows:
Evidence is either direct or circumstantial. Direct evidence is evidence which, if believed, proves a fact. Circumstantial evidence or indirect evidence is evidence which, if believed, proves a fact and from that fact you may logically and reasonably conclude that another fact exists. You cannot find a defendant guilty solely on circumstantial evidence unless the facts proved by the evidence exclude every reasonable hypothesis of innocence.
Defense counsel's objection to the charge was as follows:
You [sic], in terms of the direct and circumstantial evidence charge, we object to the wording in that it infers that the standard for circumstantial evidence that that evidence must exclude every reasonable hypothesies [sic] of innocence is being applied to the case in whole as opposed to the separate elements of the charge in the case.
Appellant now argues the above charge directed the jury to apply a stricter standard in considering the entirety of the evidence presented instead of to the separate elements of the crime charged. We disagree. At the outset, it should be noted that the trial judge's charge on circumstantial evidence is a direct quote of the charge suggested in Louisiana Jury Instructions, Criminal-Civil Section 3.6[2] wherein the authority for the text of the charge is cited as follows:
The first paragraph attempts to distinguish direct evidence from circumstantial evidence. See Cleary et al., McCormick on Evidence, Section 185 West (2nd Ed. 1972); Wigmore Law of Evidence, Section 25, Little, Brown and Co. (3rd Ed. 1940).
The second paragraph is taken directly from La.R.S. 15:438 and states the rule to be applied when the State's case depends on circumstantial evidence. See State v. Smith, 339 So.2d 829 (La.1976); State v. Elzie, 343 So.2d 712 (La.1977); State v. Allen, [129 La. 733] 56 So. 655 (La.1911).
*1285 Furthermore, the Louisiana Supreme Court has consistently held that a jury charge must be considered as a whole, and particular expressions in a charge must be construed in the context of the entire charge. Thus, it has declined to reverse the conviction on the ground of an erroneous charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337 (La.1981); State v. George, 346 So.2d 694 (La.1977).
In the instant case, after charging the jury on circumstantial evidence, the court informed the jury that: "In order to convict the defendant of the offense charged, you must find beyond a reasonable doubt that the State proved every element of first degree murder."
Reading the charge as a whole, it is clear the trial judge properly instructed the jury on the State's burden of proof. The charges, when read as a whole, are clear and correctly state the law. Assignment No. 8 lacks merit.

b. Self-defense Jury Charge

Defense counsel advanced the following argument at trial as justification for a charge on the law of self-defense.
The lack of explanation as to all of the parties who were armed and what they were armed with I believe could create an inference, reasonable inferences that the defendant was in fear of life from a multitude of individuals present on the scene who were, in fact, armed.
In denying the defendant's request for the charge, the trial judge stated:
I think your argument would have more credence if the victim of this murder was perhaps one of those that were shown to have a weapon. The victim in this particular case was a person who had no connection with the lounge and there is no evidence of any kind he participated in any of the discourse between the defendant and the owner or operators of the lounge. The testimony further shows that the incidentas the incident developed that there was no evidence of any threat posed by the victim to the defendant ...
La.C.Cr.P. art. 802 obligates the trial judge to charge the jury as to the law applicable to the case. Under this rule, the trial court is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Telford, 384 So.2d 347 (La.1980), State v. Marse, 365 So.2d 1319 (La.1978).
La.C.Cr.P. art. 807 provides that a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly pertinent and correct. State v. Johnson, 438 So.2d 1091 (La.1983). However, Telford, supra, clearly states that the requested special charges must be supported by the evidence presented at trial.
In the instant case, the record reveals that all witnesses to the shooting testified that Cruz, unarmed and unaware of what was happening, was stopped by the defendant and then shot and killed as he stood facing the defendant. All of the witnesses testified that Cruz made no overt moves toward the defendant and furthermore that until the defendant shot Cruz, no overt moves were made by anyone toward the defendant. None of the eyewitnesses to the shooting armed themselves until after the defendant shot Cruz.
Not a shred of evidence supporting a theory of self-defense was introduced by either the prosecution or the defense at trial. Thus, the trial judge properly refused to instruct the jury on the law of self-defense. There was simply no evidence presented to support such a theory and accordingly, Assignment No. 9 lacks merit.

ASSIGNMENT OF ERROR NO. 12
Prior to trial, a hearing was held on the defendant's motion to suppress the evidence. At the hearing, the police officers who arrested Butler testified to the following: Shortly after Cruz was shot, officers determined from information given them by eyewitnesses of the lounge that Butler *1286 was a suspect. The officers ran a registration on the description of Butler's car and got Butler's address. The officers went to the address as given by the registration check and knocked on his door. When Butler answered, the officers immediately recognized him as the suspect, advised him he was under arrest, and entered his apartment. Since Butler was wearing pajamas he was allowed to get dressed. Deputy Hymel followed Butler to his clothes closet and watched him closely. Hymel noticed an empty brown holster on the shelf of the closet and thereafter made a brief visual search of the room for a gun which fit the holster. About ten minutes after their arrival, the officers left the apartment to bring Butler back to the crime scene. They took nothing from the apartment at that time. As they walked out of the building they passed a neighbor of Butler's, who was standing in his doorway watching the events.
Later that morning, Sergeant Mason obtained and executed a search warrant for Butler's apartment. He found a .38 caliber Smith & Wesson revolver wrapped in a bedspread on the top shelf of the clothes closet, two pairs of dark pants, a blue pullover shirt, a NOPD uniform shirt, a Bic safety razor, and a brown leather holster. Balistics test showed that the revolver fired the shot which killed Cruz.
At the hearing, the defense called as a witness the defendant's neighbor who testified he was awakened by the officers' knock on Butler's door. He looked out, observed the confrontation at the door and watched the subsequent events through the open door of the defendant's apartment. His view however was partially blocked by the officers standing in the room watching as Butler dressed. He corroborated the officers' testimony that they were in the apartment for only ten minutes but testified that as he saw the officers leaving Butler's apartment, one of them was carrying a blue polka dot shirt and blue pants bundled up with the butt end of a protruding revolver.
The trial judge, apparently disturbed by the conflicting testimony, weighed it and gave greater credence to the neighbor's testimony than that of the five police officers. He granted the defendant's motion, apparently convinced that the revolver was taken from Butler's apartment before a search warrant was obtained.
The District Attorney immediately applied for a writ of review. Writs were granted and a panel of this court reversed the district court's decision stating:
Under most circumstances, great weight would be given to the trial court's determination as he was able to personally observe the witnesses during their testimony. This would place him in an advantageous position to view the demeanor of the witnesses and better evaluate their credibility. It is with great reluctance that the trial court's determination be overruled, however, a review of the record reveals that the officers apparently acted appropriately in their seizure of the evidence.
The panel first noted that a search of the apartment would have required more time and activity than that testified to; thus it appeared that only a cursory visual search could have been conducted, primarily as a protective measure by the arresting officers. The panel further noted that as no polka dot shirt was presented by the State in any fashion perhaps Butler's neighbor, however well intentioned, was disconcerted as he has been awakened from his sleep in the early morning hours.
Finally, the panel noted that under La.C. Cr.P. art. 703(D) the burden of proof was on the defendant to prove the ground of his motion by a preponderance of the evidence. Because he failed to meet this burden, the panel was compelled to overrule the trial court's determination of credibility.
The defendant sought writs on the appellate court's decision. The Supreme Court denied writs stating: "Result is correct."
On appeal, the defendant again alleges this court improperly overruled the district judge's determination as to the credibility of the witnesses. We find no reason to disturb our ruling. The only way appellant could prevail herein would be if he had presented new evidence showing that this *1287 court's (and the Supreme Court's) pretrial position on the admissibility was patently erroneous and produced an unjust result. This the defendant failed to do. See State v. Johnson, supra, and State v. Humphrey, 412 So.2d 507 at 523 (La.1982) (on rehearing).
Accordingly, Assignment No. 12 lacks merit.
For the reasons set forth above defendant's conviction and sentence are affirmed in full.
AFFIRMED.
NOTES
[1] Keith Landry, another patron of the Four Palms Lounge had left the bar soon after Cruz, and had been walking behind Cruz immediately before the shooting. Landry testified he saw Butler's car pull up close to Cruz and Cruz bent over as if he were talking to Butler. As Landry got into his car and reached for his cigarettes, he saw Cruz turn around, as if facing the direction of Beard, Price and Soleto, and say "This guy is going to shoot me." Landry immediately got out of his car and saw Cruz turn toward the defendant and stoop down again. Landry then heard the shot which killed Cruz.
[2] Joseph, Lamonica, and Johnson, Louisiana Jury Instructions, Criminal-Civil (1980).