GAUDIN, Judge.
Roy McFall was convicted of first degree murder by a 12-person jury in the 24th Judicial District Court and sentenced to life imprisonment.
The main thrust of his appeal is that the jury was improperly and unconstitutionally selected, and he cites Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
Specifically, McFall contends that two jurors should not have been excused for cause, on motion of the prosecution, as they were not firmly against capital punishment, a Witherspoon requirement.
We find no merit in either this argument or in any of appellant’s other assignments of error, and we affirm his conviction and sentence.
McFall, along with David Patterson, was indicted for the first degree murder of Theresa Diane Power, a young woman who was driving from Baycliff, Texas to New Orleans when she picked up McFall and Patterson, who were hitchhiking, near Houston.
When the trio arrived in Kenner, the victim was fatally stabbed by McFall after she advised him and Patterson that she was going no further in her automobile. McFall fled the murder scene on foot, jumping over several fences and hiding under a van, but he surrendered shortly thereafter and confessed to Kenner police officers.
McFall and Patterson were jointly indicted but Patterson asked for and was granted a separate trial.
In Witherspoon, the Supreme Court of the United States, in reversing a death penalty conviction, stated that jurors could be excused for cause only if they are automatically or unequivocally opposed to the death penalty. Those with conscientious scruples against capital punishment, those who might, under some extenuating circumstances, consider the death penalty and those who opposed capital punishment in *846 principle only could not be excused for cause. The Supreme Court struck down the Illinois statute that provided:
“In trials for murder it shall be a cause for challenge of any juror who shall, on being examined, state that he has conscientious scruples against capital punishment, or that he is opposed to the same.”
In response to Witherspoon, the Louisiana legislature enacted LSA-C.Cr.P. art. 798, which reads in pertinent part:
“It is good cause for challenge on the part of the state ... that:
“(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant’s guilt ...”
Louisiana courts have held this statute constitutional. See State v. Monroe, 397 So.2d 1258 (La.1981), and State v. Kelly, 375 So.2d 1344 (La.1979).
During appellant's jury selection process, Steve Hickey and Rebecca Whaley were among those called. Mr. Hickey said:
“... if it comes to really down to yes or no to the death penalty I still feel a no. I just can’t do it.”
Ms. Whaley, too, stated that she could not consider capital punishment, explaining:
“... I’ve been brought up in the Church of Christ, and they don’t believe in the death, having people put to death. If you’d do that you’d be just as guilty as the other person. It would be the same thing as killing somebody. You’d be just as guilty.”
Defense counsel attempted, by his questioning, to show that neither Mr. Hickey nor Ms. Whaley was positively against the death penalty and that they did not meet Witherspoon guidelines for disqualification for cause, but he was unsuccessful.
Regardless, as McFall was not sentenced to death, he cannot make a valid Witherspoon complaint. See State v. Jackson, 450 So.2d 621 (La.1984); and State v. Butler, 462 So.2d 1280 (La.App.1985), in which this Court said:
“More importantly, the court has held that a defendant who does not receive the death penalty has no valid complaint. State v. Edwards, 406 So.2d 1331 (La.1981), State v. Whitt, 404 So.2d 254 (La.1981), and State v. George, 371 So.2d 762 (La.1979). We find this line of cases dispositive of the instant one. In those three cases, the defendant could have received the death penalty but instead received life imprisonment. This is exactly what happened to Butler. Upon his conviction of first degree murder, he was eligible for the death penalty but was instead sentenced to life imprisonment. Thus, because he received a life sentence, he cannot complain of the impartiality of the jury as to imposition of sentence.”
Appellant also argues that the exclusion of possible jurors as Mr. Hickey and Ms. Whaley effects “... the composition of the jury panel as a whole ...” and that eliminating such jurors “... may very well have eliminated the potential for a verdict of a lesser included offense.” In other words, the end result was a so-called guilt prone jury.
McFall has not submitted scientific research, articles on jury decision-making or any other evidence supportive of this contention. We find this argument without merit, as did the Supreme Court in Wither-spoon. Mr. Justice Stewart, delivering the opinion of the Court, wrote:
“The petitioner contends that a State cannot confer upon a jury selected in this manner the power to determine guilt. He maintains that such a jury, unlike one chosen at random from a cross section of the community, must necessarily be biased in favor of conviction, for the kind of juror who would be unperturbed by *847 the pospect of sending a man to his death, he contends, is the kind of juror who would too readily ignore the presumption of the defendant’s innocence, accept the prosecution’s version of the facts, and return a verdict of guilt. To support his view, the petitioner refers to what he describes as ‘competent scientific evidence that death-qualified jurors are partial to the prosecution on the issue of guilt or innocence.’
“The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was.”
Finally, we note that appellant assigned several other district court errors, but these were neither briefed nor argued. We therefore considered these assignments abandoned in accord with numerous decisions and in compliance with appropriate court rules.
We did examine the record and the testimony for errors patent and found none.
For the foregoing reasons, we affirm appellant’s conviction and his sentence to life imprisonment.
AFFIRMED.