653 So.2d 631 (1995)
STATE of Louisiana
v.
Ellzey CROSSLEY.
No. 94-KA-965.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 1995.
*632 Wiley J. Beevers, Lawrence B. Hoffing, Gretna, for appellant Elizey Crossley.
John M. Mamoulides, Dist. Atty., Parish of Jefferson, Terry M. Boudreaux, Asst. Dist. Atty., Research & Appeals, Courthouse Annex, Gretna, for appellee State.
Before KLIEBERT, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Ellzey Crossley, appeals from his conviction of second degree murder. Thereafter, he was sentenced to life imprisonment at hard labor without probation, parole or suspension of sentence. We affirm the conviction, amend the sentence to give credit for time served and remand.
*633 On August 5, 1993, defendant was charged by indictment with the second degree murder of Allison Cason, a violation of La.R.S. 14:30.1. Defendant was arraigned and pled not guilty on September 3, 1993. The first two trials ended in mistrials on March 3, 1994 and May 12, 1994. The third trial by jury took place on August 23, 1994 through August 25, 1994. The jury found him guilty as charged on August 25, 1994. On September 9, 1994 the trial judge sentenced him to a mandatory life term of imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
The evidence that came out at trial was that, on July 16, 1993, Jefferson Parish deputies responded to a call from a man who stated he had shot his girlfriend. When the deputies arrived at the apartment of Allison Cason, they found defendant calmly standing outside of the apartment, smoking a cigarette. The dead body of the victim was found lying in her bedroom, face down in a pool of blood. Defendant, who appeared coherent, was detained and advised of his rights.
Defendant gave a statement that he had an argument with the victim, who was his girlfriend for about four years. He stated that she had four children, two of which were his. He said that she had been staying in a care center (for the homeless) where the custodians were allegedly keeping her money. He said that the victim had a recently rehabilitated drug habit. Defendant stated that he was moving the victim into an apartment on the day of the shooting. An argument about money arose during the day. He took the victim to her sister's house to get some money which she supposedly owed the victim. The arguing continued and he slapped her when she got into the car to return to the apartment. She got out of the car and he left to go to his house. Defendant stated that later in the evening, around 10:30 p.m., he returned to the apartment. The children were sleeping at that time. Prior to returning to the apartment, he had two beers. When he arrived, defendant stated that he went into the bedroom of the apartment and confronted the victim about her spending all her money. He stated that he slapped and punched her and they both fell on the bed. He stated that as she fell to the bed he removed his gun from his waist belt and "slapped her upside the head" with his gun twice. He claimed that the second time he struck, the gun fired accidentally, striking the victim in the head. Defendant was certain she was dead, so he drove to a nearby convenience store to use the pay telephone to call the police.
At trial, Deputy Alex Norman, one of the first officers at the scene, testified that when he arrived, defendant was cooperative, was not crying and did not appear remorseful when he gave his statement about the shooting. Deputy Norman stated that defendant did not appear to be intoxicated, impaired or on medication. The deputy admitted he did not ask defendant if he had taken medication, consumed alcohol or if the shooting was accidental.
The investigating officer, Detective Alvis West, testified that defendant did not appear intoxicated or remorseful shortly after the murder. Also, the detective did not smell any alcohol on defendant's breath. Detective West testified that defendant was coherent and expressed concerns about the effect the shooting would have on his employment. The detective admitted that he did not ask defendant if he was on any medication. Although defendant stated he had two beers to drink, Detective West said he did not see any indication that defendant was taking narcotic drugs.
The victim's sister, Ada Stewart, testified that the victim and defendant came to her home the evening of the shooting. She stated that defendant was edgy and rude. The victim asked for money, but Ms. Stewart refused to give it to her. Ms. Stewart claimed that defendant was not happy about this refusal and left her home without his girlfriend. Ms. Stewart said that she later drove her sister home. Ms. Stewart also testified that she arrived at the scene of the shooting after the police and saw her sister's body.
The victim's thirteen year old son testified that he heard defendant and his mother arguing about money on the evening of the shooting, but that he and his siblings were *634 asleep in the apartment when it occurred. The child also claimed that defendant had come back to the apartment earlier when his mother was not home, that defendant was carrying a gun in his hand at that time and left when he discovered that the victim was not there.
A neighbor, Jacqueline Foster, testified that between 10:00 and 11:00 p.m. on the night of the shooting, she heard a woman screaming "stop" in the victim's apartment. She said that the scream did not sound like a woman correcting children. Ms. Foster stated that it sounded as though the woman was begging someone to stop doing "something", but she could not identify that person.
Dr. Susan Garcia, a forensic pathologist with the Jefferson Parish Coroner's Office, testified that the victim's death was due to a gunshot wound to the head. She stated that examination of the wound showed that when the shot was fired from the gun, the muzzle was pressed directly and with pressure against the skin. It was not barely touching the skin, nor was it sideways to the victim's head when it discharged. Additionally, she did not find any other injury to the victim's face, including injuries consistent with being slapped, as defendant had indicated in his statement to the police.
Deputy Bodet, the intake booking officer who processed all incoming arrestees at the jail, was called by the State. He stated that during booking defendant denied taking any medication and that defendant signed the intake questionnaire reflecting the fact that defendant stated he was not taking any medications. On cross-examination, it was pointed out that numerous questions on the document were not completed.
Louise Walzer, a firearms examiner with the Jefferson Parish Crime Laboratory, was qualified as an expert in firearms. She testified that numerous tests were conducted on the gun which was used to shoot the victim. The tests showed that the weapon was a single action AMT backup .380 with two safety controls. Walzer stated that this weapon cannot fire without the trigger being pulled. She found no mechanical accidental discharges, but could not rule out that the shooting was a result of a "human accidental discharge."
The defense called Louis Theriot, a former sheriff's deputy, who repairs firearms and owns a shooting range. He was also qualified as an expert in firearms. He stated that the gun in evidence was "hard to handle". According to Theriot, "in the hands of an inexperienced operator ... [the gun was] prone to accidental discharges." However, he did not find any mechanical defects in the weapon. He stated that failing to find mechanical malfunctions during the tests did not eliminate the possibility of a such a malfunction actually happening.
Defendant testified that he was employed by the parish streets department as a road superintendent and that he had no prior criminal record. He reiterated the statement that he made to the police. He furthermore stated that he had purchased the gun because he lived in a high crime area, but had never received any firearm training. In addition, defendant stated that on the evening of the shooting, he took three tablets of Vicodin and one tablet of Thorazine, which had been prescribed for muscle spasms. Defendant admitted being angry at the victim because she spent money that she was supposed to be saving while she was living in the care center. He said that he drank two twelve ounce beers "to calm down." Defendant said he confronted the victim, who he claimed had a drug addiction, about spending the money. Defendant stated that he began slapping the victim and fell into the bed on top of her. He hit her again on the shoulders. However, he felt mixed emotions of love and pity and he stated that he never hit the victim hard. As he was getting off of the victim, defendant said he used his gun to "lightly tap" the victim on the side of her head and said, "you have a hard head." As the victim moved, the gun suddenly fired. Defendant testified that he was confused. However, before leaving to call the police, he moved the gun because of concern for the children in the apartment. Defendant claims that the gun fired accidentally and that he did not intend to pull the trigger, shoot or kill the victim. On cross-examination, defendant denied that he was thinking clearly, but *635 admitted that the was able to drive to the telephone and talk to the police. He denied being at the apartment earlier looking for the victim.
Gary Joe McGarity, an expert in pharmacy and pharmacology, testified for the defendant. He stated that the effect of the amount of medication and beers allegedly consumed by defendant could cause impairment, intoxication that would block inhibitions, and potentially cause that person's thinking to be irrational. On cross-examination, he admitted that he did not know if defendant actually took the medications. Also, he could not say "what combination of alcohol, illicit drugs or prescription drugs leads to the equation of murder."
On appeal, defendant asserts that the trial judge erred in refusing to grant a jury instruction on involuntary intoxication. First, he contends that the refusal caused him to be convicted and that conviction constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Second, he contends that the refusal impermissibly removed from the jury's consideration the state of mind, motive and intent of defendant, or, stated another way, it impermissibly interfered with a question of fact for the jury to decide. Third, he asserts that the trial court's refusal to grant a jury instruction on involuntary intoxication, looking at the totality of circumstances, overcame his ability to put on a defense of involuntary intoxication. Fourth, he asserts that the refusal to grant a jury instruction on involuntary intoxication for prescribed medicines, in combination with alcohol, as a matter of law, improperly removed a defense and/or mitigating factors.
Defendant argues that: (1) there was sufficient evidence that the combined effect of ingested alcohol and drugs prevented defendant from controlling "certain aspects of his behavior," (2) defendant cannot be punished for his "illness", and (3) there was evidence that defendant might not have been aware of his actions at the time of the offense. Defendant also argues that the trial court erroneously failed "to appoint a court psychiatrist and drug expert" to show that defendant was not intoxicated and that the trial court failed to "appoint either a sanity commission or court-appointed psychiatrist to investigate defendant's possible drug induced mental disorder as it relates to evidentiary constraints and the McNaghten [sic] Rule and defendant's capacity for Mens rea."
The state argues that there was no credible evidence that defendant was intoxicated, much less involuntarily intoxicated, at the time of the homicide. It contends that the trial court was not required to believe defendant's "self serving testimony" that he had ingested Vicodin [a narcotic used to relieve pain], Thorazine [an anti-psychotic drug], and two twelve ounce beers shortly before the murder.
In her jury instructions, the trial judge included a jury instruction taken from La. R.S. 14:15 regarding the intoxication defense as follows:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial except as follows:
Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
The trial judge deleted R.S. 14:15(1) which states:
Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
The trial judge ruled that it deleted this exception because it did not find "any evidence that it was [an] involuntary taking of the medication."
La.C.Cr.P. art. 802 provides that the scope of the general charge given to the jury shall be as follows:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept *636 and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence.
Thus, Article 802 obligates the trial court to charge the jury as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Johnson, 438 So.2d 1091, 1097 (La.1983); State v. Butler, 462 So.2d 1280, 1285 (La.App. 5th Cir.1985), writ denied, 541 So.2d 886 (La.1989); State v. Martin, 92-811 (La.App. 5th Cir. 5/31/94); 638 So.2d 411, 412. Special charges are governed by La.C.Cr.P. art. 807 which provides, in part, that "a requested special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent." However, the charge must be supported by the evidence. State v. Simmons, 422 So.2d 138, 141 (La.1982); Martin at 413.
In the case before us, the evidence does not support a theory of intoxication. Although defendant claims that he ingested the medication and alcohol before the shooting, there was no evidence that he appeared or was in fact intoxicated or impaired shortly after the murder. In fact, defendant was coherent enough to move the gun so that the children in the apartment could not find it. Also, defendant did not prove that he had an illness such as alcoholism which caused him to drink and become intoxicated. Therefore, since there was no evidence of any intoxication, voluntary or involuntary, we find that the requested charge was not pertinent and the trial judge did not err in refusing to give the charge.
Moreover, defendant's argument that the trial judge erred in not appointing a sanity commission or court drug expert is not related to the assigned error regarding the jury instruction. Nevertheless, the record shows that defendant did not plead "not guilty by reason of insanity", and did not request the appointment of a sanity commission or drug expert. Thus, the trial judge did not err in this regard.
We have also reviewed the record for patent error under La.C.Cr.P. art. 920 which provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
In reviewing the record, we find two errors patent on the face of the record. First, the record contains a commitment form that indicates that the trial court gave defendant credit for time served. However, the transcript of the sentencing shows that the trial judge failed to order that defendant be given this credit, as required by La. C.Cr.P. art. 880. When there is a discrepancy, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Since La.C.Cr.P. art. 880 is mandatory, we will order that defendant be given credit for time served.
Second, the trial judge failed to advise defendant of the time delay for filing for post-conviction relief, as is mandated by La.C.Cr.P. art. 930.8C. Said article dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. However, the failure to inform the defendant is not a ground for vacating the sentence. Rather, the appropriate remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to defendant within *637 ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289; See also State v. Procell, 626 So.2d 954 (La.App. 3rd Cir.1993); State v. McSweeney, 619 So.2d 861 (La.App. 3rd Cir. 1993); State v. Sumlin, 605 So.2d 608 (La. App. 2nd Cir.1992).
Accordingly, defendant's conviction is hereby affirmed. His sentence is amended to provide credit for time served. Further, the case is remanded and the trial judge is ordered to notify defendant of the prescriptive period for post-conviction relief by written notice within ten days of rendition of this opinion and to file written proof that defendant received said notice in the record of this proceeding. Otherwise, the sentence is affirmed as amended.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; CASE REMANDED WITH ORDER.